UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * *
MAARTEN N. PELLEGRINI,                        *
            Plaintiff                         *
                                              *        Case Number:  05CV30077-KPN
                                              *
vs.                                           *
                                              *
CENTURY 21, HAROLD DUPEE                       *
REALTORS,                                     *
            Defendant                         *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## PLAINTIFF'S MOTION TO COMPEL

Now comes Plaintiff Maarten N. Pellegrini ("Plaintiff") for a motion under Fed. R.

Civ. P. 33(b)(5) and 37(a)(2)(B) to compel Defendant Century 21, Harold Dupee Realtors

("Century 21") to answer interrogatories submitted by Plaintiff.  Plaintiff also requests

that the court award Plaintiff reasonable expenses as a consequence of Plaintiff having to

bring this motion to the attention of the court.  Plaintiff states that he has conferred in

good faith with Counsel for Century 21 on February 9, 2006 and February 10, 2006 in an

attempt to secure the information justly sought without court action to no avail.  See

Exhibit A.   Plaintiff's reasons for his Motion are set forth in the following memorandum.

MEMORANDUM

1

Plaintiff has asserted in this case that Century 21 failed to comply with lead paint disclosure laws. Plaintiff is entitled, and feels that it is necessary in the prosecution of his case, to discovery of **the specific circumstances** alleged by Century 21 in the transfer and disclosure of information concerning lead paint hazards to the Plaintiff. Plaintiff has in good faith asked questions to clarify the obviously vague answer of "Yes, because it was" by Century 21 referring to the Plaintiff's First Set of Interrogatories. See Exhibit B. In doing so the Plaintiff has drafted specific questions (Second Set of Interrogatories) for Century 21 to answer. See Exhibit C. Plaintiff's Second Set of Interrogatories attempts to secure information relevant to Century 21's alleged compliance with these laws by way of clear and specific questions, each requiring a clear and specific answer. Many of the simple yes or no questions posed by the Plaintiff were totally ignored. **Century 21's answer to all questions in section 4 was:** "A.  Richard Shoestock personally delivered the entire Property Transfer Lead Paint Notification to Mr. Pellegrini at one of Mr. Pellegrini's visits to North Adams. It was delivered in person at the office of Century 21 Harold Dupee Realtors, 40 Main Street, at the Holiday Inn, North Adams, Massachusetts." Therefore, Century 21 repeatedly ignored simple yes or no questions (4B, 4D, 4F, 4H, 4I, and 4I(ii)). Century 21's single answer (shown above) also does not answer the question as to the identity of any evidence (questions 4B, 4D, 4F, 4H, and 4I(ii)). Also, this answer does not answer the question as to which Mr. Pellegrini (i.e., Maarten N. Pellegrini, or Nicola N. Pellegrini) the alleged Package was given to (question 4G). Furthermore, this answer does not answer the questions 4A and 4H(i). Plaintiff has brought these points to the attention of Counsel for Century 21 and was ignored. See Exhibit A. Century 21's use of an answer to a previous and fundamentally

different question as answers to **separate questions** (See exhibit C, answers B – I) is clearly an attempt to evade the questions justly posed by the Plaintiff.  Century 21 in its Response has either failed to answer, provided incomplete answers, or has provided evasive answers to Plaintiff's submitted Interrogatories.

Also, Century 21 has not stated any grounds for objections to Plaintiff's Interrogatories with specificity and in a timely manner as required under Fed. R. Civ. P. 33(b)(4) as has, therefore, waived any grounds not to answer the Interrogatories as submitted.

Plaintiff requests that the court compel Century 21 to answer Plaintiff's unanswered Interrogatories including all subparts.  Plaintiff accepts Century 21's answers to Interrogatories 4C, 4E, 5, and 6.  Century 21's answers are clearly evasive and incomplete for reasons cited above.  Plaintiff respectfully requests that the court compel Century 21 to give specific and complete answers to Interrogatories Nos: 4A, 4B, 4D, 4F, 4G, 4H, 4I, 4I(i), and 4I(ii), and award the Plaintiff reasonable costs for having to file this motion and for related expenses in doing so.


For The Plaintiff,


Maarten N. Pellegrini, Plaintiff *pro se*
56 Liberty Street, North Adams, Massachusetts 01247
774-364-0081


3

## CERTIFICATE OR SERVICE

I, Maarten N. Pellegrini, certify that on February 23, 2006, a copy of the above document was mailed by first class mail, postage prepaid, to counsel of record for Century 21 at the address below:

Law Office of Donald E. Phillips
Attn: Richard F. Faille
One Monarch Place,
1414 Main Street, Suite 550
Springfield, MA    01144

Maarten N. Pellegrini

# EXHIBIT #1

Hitachi SuperH™ RISC engine

# SH7708 Series

## SH7708, SH7708S, SH7708R

Hardware Manual



ADE-602-105H
Rev.9.0
3/7/03
Hitachi, Ltd.

ZOLL  0318

**Acronyms & Abbreviations (most common first)**　　　　　　　　Monday, June 13, 2005

**Free Ad & Spyware Remover**
Remove Adware & Spyware, Free. Full
version only from Privacy Crusader.

**Free 24/7 Tech Support**
Free Virus & Spyware Removal Expert Help
For All PC Problems

Ads by Google

**Sponsors:**　Marketing Plans　|　Online Dictionary
Diamonds　|　Online Encyclopedia　|　DVD-R

| AF Acronym Finder | Option | | New acronym search | |
|---|---|---|---|---|
| home/new search | exact acronym | ⬍ | RISC | Find |

# What does **RISC** stand for?
## Your search returned 14 meanings (**Most Common** meaning(s) listed first)

| Search again sorting by... | Most Common | Information Technology | Military & Government | Science & Medicine | Organizations, Schools, etc. | Business & Finance | Slang & Chat | Alternative Searches |
|---|---|---|---|---|---|---|---|---|

| Acronym(s) | Definition(s) | Info |
|---|---|---|
| **RISC** | **Reduced Instruction Set Computer** | 🔲 🔲 |
| **RISC** | Radiology Information System Consortium | 🔲 🔲 |
| **RISC** | Reduced Instruction Set Class | 🔲 🔲 |
| **RISC** | Reduced Instruction Set Code | 🔲 🔲 |
| **RISC** | Reduced Instruction Set Computing | 🔲 🔲 |
| **RISC** | Regional Intelligence Support Center | 🔲 🔲 |
| **RISC** | Regional Interagency Steering Committee (FEMA/ Federal Response Plan) | 🔲 🔲 |
| **RISC** | Regulatory Information Service Center (OMB) | 🔲 🔲 |
| **RISC** | Research Group on Instability in Coronary Artery Disease | 🔲 🔲 |
| **RISC** | Research Institute for Symbolic Computation (Linz, Austria) | 🔲 🔲 |
| **RISC** | Responsible Internet Service Companies | 🔲 🔲 |
| **RISC** | Risk Information Support Center | 🔲 🔲 |
| **RISC** | Risk Institute for the Support of Communication | 🔲 🔲 |
| **RISC** | RNA Induced Silencing Complex (ribonucleoprotein complex involved in mRNA degradation) | 🔲 🔲 |

56000/1, where the '56' comes fro...). The DSP96000 was one of the first to perform fully IEEE floating point compliant operations.

The processor is not pipelined, but designed for single cycle independent execution within each unit (actually this could be considered a three stage pipeline). With multiple units and the large number of registers, it can perform a floating point multiply, add and subtract while loading two registers, performing a DMA transfer, and four address calculations within a two clock tick processor cycle, at peak speeds.

It's very similar to the Analog Devices ADSP2100 series - the latter has two address units, but replaces the separate data unit with three execution units (ALU, a multiplier, and a barrel shifter).

The DSP56K and 680xx CPUs have been combined in one package (similar idea as the TMS320C8x) in the Motorola 68456.

The DSP56K was part of the ill-fated NeXT system, as well as the lesser known Atari Falcon (still made in low volumes for music buffs).

---

Motorola:
    http://www.mot.com/
Motorola Digital Signal Processors:
    http://www.mot.com/SPS/DSP/products/

---

## Part XII: Hitachi SuperH series, Embedded, small, economical (1992) . . . . . . .

Although the TRON project produced processors competitive in performance (Fujitsu's(?) Gmicro/500 memory-data CPU (1993) was faster and used less power than a Pentium), the idea of a single standard processor never caught on, and newer concepts (such as RISC features) overtook the TRON design. Hitachi itself has supplied a wide variety of microprocessors, from Motorola and Zilog compatible designs to IBM System/360/370/390 compatible mainframes, but has also designed several of its own series of processors.

The Hitachi SH series was meant to replace the 8-bit and 16-bit H8 microcontrollers, a series of PDP-11-like (or National Semiconductor 32032/32016-like) memory-data CPUs with sixteen 16-bit registers (eight in the H8/300), usable as sixteen 8-bit or combined as eight 32-bit registers (for addressing, except H8/300), with many memory-oriented addressing modes. The SH is also designed for the embedded marked, and is similar to the ARM architecture in many ways. It's a 32 bit processor, but with a 16 bit instruction format (different than Thumb, which is a 16 bit encoding of a subset of ARM 32 bit instructions, or the NEC V800 load-store series, which mixes 16 and 32 bit instruction formats), and has sixteen general purpose registers and a load/store architecture (again, like ARM). This results in a very high code density, program sizes similar to the 680x0 and 80x86 CPUs, and about half that of the PowerPC. Because of the small instruction size, there is no load immediate instruction, but a PC-relative addressing mode is supported to load 32 bit values (unlike ARM or PDP-11, the PC is not otherwise visible). The SH also has a Multiply ACcumulate (MAC) instruction, and MACH/L (high/low word) result registers - 42 bit results (32 low, 10 high) in the SH1, 64 bit results (both 32 bit) in the SH2 and later. The SH3 includes an MMU and 2K to 8K of unified cache.

The SH4 (mid-1998) is a superscalar version with extensions for 3-D graphics support. It can issue two instructions at a time to any of four units: integer, floating point, load/store, branch (except for certain non-superscalar instructions, such as modifying control registers). Certain instructions, such as register-register move, can be executed by either the integer or load/store unit, two can be issued at the same time. Each unit has a separate pipeline, five stages for integer and load/store, five or six for floating point, and three for branch.

Hitachi designers chose to add 3-D support to the SH4 instead of parallel integer subword operations like HP MAX, SPARC VIS, or Intel MMX extensions, which mainly enhance rendering performance, because they felt rendering can be handled more efficiently by a graphics coprocessor. 3-D graphics support is added by supporting the vector and matrix operations used for manipulating 3-D points (see Appendix D. This involved adding an extra set of floating point registers, for a total of two sets of sixteen - one set as a 4X4 matrix, the other a set of four 4-element vectors. A mode bit selects which to use as the foreground (register/vector) and background (matrix) banks. Register pair operations can load/store/move two registers (64 bits) at once. An inner product operation computes the inner product multiplication of two vectors (four simultaneous multiplies and one 4-input add), while a transformation instruction computes a matrix-vector product (issued as four consecutive inner product instructions, but using four internal work registers so intermediate results don't need to use data registers).

The SH4 allows operations to complete out of order under compiler control. For example, while a transformation is being executed (4 cycles) another can be stored (2 cycles using double-store instructions), then a third loaded (2 cycles) in preparation for the next transformation, allowing execution to be sustained at 1.4 gigaflops for a 200MHz CPU.

The SH5 is expected to be a 64-bit version. Other enhancements also planned include support for MPEG operations, which are supported in the SPARC VIS instructions. The SH5 adds a set of eight branch registers (like the Intel/HP IA-64), and a status bit which enables pre-loading of the target instructions when an address is placed in a branch register.

The SH is used in many of Hitachi's own products, as well as being a pioneer of wide popularity for a Japanese CPU outside of Japan. It's most prominently featured in the Sega Saturn video game system (which uses two SH2 CPUs) and Dreamcast (SH4) and many Windows CE handheld/pocket computers (SH3 chip set).

---

Hitachi:
http://www.hitachisemiconductor.com/

---

## Part XIII: Motorola MCore, RISC brother to ColdFire (Early 1998) .

To fill a gap in Motorola's product line, in the low cost/power consumption field which the PowerPC's complexity makes it impractical, the company designed a load/store CPU and core which contains features similar to the ARM, PowerPC, and Hitachi SH, beignning with the M200 (1997). Based on a four stage pipeline, The MCore contains sixteen 32-bit data registers, plus an alternate set for fast interupts (like the ARM, which only has seven in the second set), and a separate carry bit (like the TMS 1000). It also has an ARM-like (and 8x300-like before it) execution unit with a shifter for one operand, a shifter/multiply/divide unit, and an

SuperH, Inc. Handheld Applications                                                                                    6/13/05 1:27 PM



About SuperH        Press room        Products        Partners        Support        Japan

## Handheld applications

The SuperH architecture has an impressive legacy of powering handheld devices from PDAs to digital cameras and SuperH are now developing a family of CPU cores specifically targeted at next generation devices in this market. The SH-5 multimedia CPU core delivers both general purpose and DSP performance replacing a RISC and DSP in many existing applications. At a target of 0.3mW/MHz the SH-5 will deliver the best power/performance on the market.

### Next Generation Mobile Phones

These products will have separate baseband and multimedia processors and the SH-5 CPU with its SIMD instruction set supports programmable audio and video codecs such as MPEG4, MP3, H26x and G7xx.





### Digital Cameras

Processing digital and moving images, adding audio and communications capabilities demand a multimedia CPU. SuperH CPUs have demonstrated success in this market and the SH-5 SIMD operations are ideally suited to offering a flexible programmable solution.

### Portable electronic vapor analyzer uses SH-4

The Cyranose 320 is a portable electronic sniffer developed by a Pasadena-based company called Cyrano Sciences, Inc. Its handheld product, based on sensor technology, recognizes certain chemical signatures and is targeting three initial markets: the chemical environmental market, the food processing industry, and the medical establishment.
It uses the SH-4 CPU which was selected for performance, high speed, and very low power. The chip incorporates a power management module, allowing designers to turn capabilities on and off at will. It is rated at 1.3 Gigaflops, enabling 1.3 billion operations per second. The SH-4 runs at up to 200 MHz, but power consumption is extremely low. It has sleep modes and deep-sleep modes of operation so it can conserve a maximum amount of energy.
The SH-4 also offers total clock management, allowing the design team to provide for a turbo-charged mode—reaching nearly the full 200 MHz that can handle implementation of complex algorithms in the future. On top of the power features of the device, the design team provided for a lot of memory on board. The handheld offers 1 MB of program flash, so that it can support very large programs. It also offers 512K of RAM so that the sniffer can compute matrix calculations, including I-convectors and matrix conversions.
The handheld also has 8 MB of storage, permitting datalogging and storage of vast amounts of information in nonvolatile memory. One scan-across sensor array (a single pattern) is about 100 bytes, thus the device can store a huge number of patterns for different signatures from vapors introduced into the sample chamber.
More information can be found at http://www.chipcenter.com/eexpert/lgoldberg2/tbreunig001.html
and www.cyranosciences.com





More information can be found at:
http://www.xybernaut.com/Solutions/product/poma_product.htm

**Wearable computer uses SH-4**

Xybernaut, Inc. have developed the POMA, wearable computer incorporating an SH-4. Poma gives access to e-mail, Internet sites and games and includes an integrated MP3 player. Poma's headmounted display is a one-inch, color, 640 x 480 SVGA viewing screen sitting below the eye and weighing approximately 3 ounces. It provides a viewing area similar to that of a desktop monitor from two feet away.

Poma is a powerful, highly functional computer manufactured by Renesas and is based on the Microsoft Windows CE operating system. It has a 128MHz RISC processor, 32 MB of RAM, 32 MB ROM, a Compact Flash™ slot and one USB port. Poma supports up to 1 GB micro drives, wireless modem cards, wireless LANs and the new CF technology (as it emerges) through its integrated Compact Flash slot. The on-board USB port connects to a customized, hand-held, touch optical mouse pointing device for easy Internet and Windows navigation. Poma is also compatible with wearable keyboards and other pointing and input devices

# EXHIBIT  B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * *
                                        *
MAARTEN N. PELLEGRINI and               *
NICOLA M. PELLEGRINI,                   *
            Plaintiffs                  *   Case Number:  05CV30077-KPN
                                        *
vs.                                     *
                                        *
CENTURY 21, HAROLD DUPEE                *
REALTORS,                               *
            Defendant                   *
                                        *
* * * * * * * * * * * * * * * * * * * * * * *
```

## DEFENDANT'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

1.      Does Century 21 claim that the entire Property Transfer Lead Paint Notification Package

("Package") was sent to the Plaintiffs prior to Plaintiffs' signing the purchase and sales agreement?

If so, state the basis of that claim.

**Answer:**      Yes, because it was.


2.      Does Century 21 claim that it is not liable under the law even if Century 21 did not, in fact,

send the Package to the Plaintiffs?  If so, state the basis of that claim.

**Answer:**      This calls for a legal opinion which I do not feel qualified to answer.


3.      Specifically identify the information likely to be obtained from each individual identified in

Defendant's Initial Disclosure for which Defendant may use to support its claims and/or defenses.

**Answer:**      This question is confusing, overly broad, not in proper form and again calls for legal

opinions for which I do not feel qualified to answer.

Signed under the pains and penalties of perjury this 13th day of January, 2006.

Mary-Jane Dalmaso

Mary-Jane Dalmaso

As to all Objections:

The Defendants,
By their Attorney

/s/ Richard F. Faille
Richard F. Faille, Esquire, BBO#: 157640
Law Offices of Donald E. Phillips
1414 Main Street, Suite 550
Springfield, MA 01144
(413) 730-6328
Fax-(413) 730-6361
rffaille@stpaultravelers.com

### CERTIFICATE OF SERVICE

I, Richard F. Faille, Attorney for the Defendants, hereby certify that on January 18, 2006, I copied the foregoing Answers to Plaintiffs' Interrogatories by mailing a copy of the same, postage prepaid, to:

Maarten N. Pellegrini, Pro Se
Nicola M. Pellegrini, Pro Se
56 Liberty Street
North Adams, MA   01247

/s/ Richard F. Faille

2

# EXHIBIT  C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                *
MAARTEN N. PELLEGRINI and       *
NICOLA M. PELLEGRINI,           *
              Plaintiffs         *    Case Number:  05CV30077-KPN
                                *
vs.                             *
                                *
CENTURY 21, HAROLD DUPEE        *
REALTORS,                       *
              Defendant          *
                                *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## DEFENDANT'S ANSWERS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

4.    What is the basis of Century 21's answer of "Yes, because it was." To question 1 of

Plaintiff's first set of interrogatories, specifically including:

A.    On what date and time was the Property Transfer Lead Paint Notification Package

("Package") transferred to the Plaintiffs ("Maarten Pellegrini and/or Nicola

Pellegrini")?

B.    Does Century 21 have any evidence to verify this date and time?  And if so identify

the evidence.

C.    By whom was the Package transferred to Maarten Pellegrini and/or Nicola

Pellegrini?

D.    Does Century 21 have any evidence to verify by whom it was transferred to Maarten

Pellegrini and/or Nicola Pellegrini? And if so identify the evidence.

E.    Through what medium (in hand, electronically, by mail, etc.) was the Package

transferred to Maarten Pellegrini and/or Nicola Pellegrini.

F. Does Century 21 have any evidence to verify which medium the Package was transferred to Maarten Pellegrini and/or Nicola Pellegrini? And if so identify the evidence.

G. To whom was the Package transferred, Maarten Pellegrin or Nicola Pellegrini, if not transferred to Maarten Pellegrin and Nicola Pellegrini?

H. Does Century 21 have any evidence to verify to whom the Package was transferred? And if so identify the evidence.

I. Were any oral, written or electronic communications between Century 21 and Maarten Pellegrini and/or Nicola Pellegrini conduced at the time of the alleged transfer of the Package? If so:

(i) What was said or communicated in the oral, written or electronic communications at the time of transfer of the Package?

(ii) Does Century 21 have any evidence to verify any oral, written or electronic communications between Century 21 and Maarten Pellegrini and/or Nicola Pellegrini at the time of transfer of the Package? And if so identify the evidence.

**ANSWER:**

A. Richard Shoestock personally delivered the entire Property Transfer Lead Paint Notification to Mr. Pellegrini at one of Mr. Pellegrini's visits to North Adams. It was delivered in person at the office of Century 21 Harold Dupee Realtors, 40 Main Street, at the Holiday Inn, North Adams, Massachusetts.

B. See "A" above.

C. See "A" above.

2

D.    See "A" above.

E.    See "A" above.

F.    See "A" above

G.    See "A" above

H.    See "A" above

I.    See "A" above

5.    Specifically identify the person or persons responsible for the retention of documents

obtained in the normal course of Century 21 business.

**ANSWER:**    All agents associated with Century 21 Harold Dupee, Realtors, are independent

contractors. Each agent is responsible for preparing and retaining documents pertaining to his or her

transaction in the office file. After the closing, Mary-Jane Dalmaso, Broker, is responsible for

retention of documents.

6.    What is Century 21's document retention policy?

**ANSWER:**    Seven years.

Signed under the pains and penalties of perjury this____ 4th ____day of February, 2006.

*Mary-Jane Dalmaso*
Mary-Jane Dalmaso

As to all Objections:

The Defendants,
By their Attorney

/s/ Richard F. Faille
Richard F. Faille, Esquire, BBO#: 157640
Law Offices of Donald E. Phillips
1414 Main Street, Suite 550
Springfield, MA 01144
(413) 730-6328
Fax-(413) 730-6361
rffaille@stpaultravelers.com


## CERTIFICATE OF SERVICE

I, Richard F. Faille, Attorney for the Defendants, hereby certify that on February 6, 2006, I copied the foregoing Answers to Plaintiffs' Second Set of Interrogatories by mailing a copy of the same, postage prepaid, to:

> Maarten N. Pellegrini, Pro Se
> Nicola M. Pellegrini, Pro Se
> 56 Liberty Street
> North Adams, MA   01247

/s/ Richard F. Faille

4