UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
\[CLERK\]'S OFFICE

2007 JAN 31  A 9: 43

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MAARTEN N. PELLEGRINI
    Plaintiff

Case Number: 05CV30077-MAP

vs.

CENTURY 21, HAROLD DUPEE
REALTORS,
    Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Now comes Plaintiff Maarten N. Pellegrini ("Plaintiff") for a motion for partial summary judgment under Fed. R. Civ. P. 56 finding that Century 21, Harold Dupee Realtors ("Century 21") is liable under 42 U.S.C. Section 4852d for failure to comply with required lead paint disclosures to Plaintiff. Based on material facts in which there are no genuine issues to be tried, Plaintiff is entitled to a judgment as a matter of law. In support of his motion Plaintiff herewith submits Exhibits A-J, and the following Memorandum

### MEMORANDUM

1

## I. Statement Of The Material Facts Of Record In Which There Are No Genuine Issues To Be Tried

Material facts of record ("Facts") in which there are no genuine issues to be tried in this case are:

1. Century 21 claims that Mr. Richard Shoestock personally delivered the Massachusetts Department Of Public Health lead paint disclosure form entitled "Property Transfer Lead Paint Notification" ("Package") to the prospective buyers of the property at 56 Liberty St. North Adams, MA ("Property"). See Exhibit A, Defendant's Answers To Plaintiff's Second Set Of Interrogatories, Answer No. 4C; Exhibit I, Portions of 30(b)(6) Deposition of Century 21 ("Century 21 Depo"), page 36, lines 19-22.

2. Mr. Shoestock was the agent for the Buyer (Plaintiff) in the transfer of the Property and never acted on behalf of the Seller. See Exhibit D, completed signature page; Exhibit J, Portions of Deposition of Richard Shoestock ("Shoestock Depo"), page 23, lines 22-25; page 24, lines 1-2; page 56, lines 19-22; page 57 line 1; Exhibit C, signed agency disclosure.

3. Neither the Seller nor the Seller's agent disclosed the Package to the prospective buyers of the Property. See Exhibit A, Defendant's Answer to Plaintiffs Second Set Of Interrogatories, Answers Nos. 4C, 4D, 4H, and 4I(ii); Exhibit J, Shoestock Depo, page 23, lines 22-25; page 24, lines 1-2; page 37, lines 14-18; Exhibit I, Century 21 Depo, page 35, lines 2-4; Exhibit D, completed signature page, signatures of Seller's agent Francis Buckley and Buyer's agent Richard Shoestock.

4. Century 21 represented the SELLER in the transfer of the Property. See Exhibit B, Defendant's Answers To Plaintiff's Request For Admissions, Answer No.3.

5. Century 21 knew of its obligations to provide the Package to prospective buyers. See Exhibit B, Defendant's Answers To Plaintiff's Request For Admissions, Answer No. 4.

6. The Package is the standard notification form for compliance with federal lead paint disclosure requirements. See Exhibit H, EPA Regulations, 40 CFR Chapter 1, Section 745.107(a)(1); Exhibit F, Package, page 1; Exhibit J, Shoestock Depo, page 10, lines 1-25.

7. The Package must be given in full to meet federal lead paint disclosure requirements. See Exhibit F, Package, page 1.

8. The Purchase and Sale Agreement ("Contract") for the Property states, "The BUYER further acknowledges that, prior to signing of this Agreement, the SELLER and Broker(s) have (a) provided to the BUYER the standard notification form from the Massachusetts Department of Public Health concerning lead paint, the certificate for which BUYER has signed, which is attached hereto;" See Exhibit E, December 1, 2003 fax, pages 3-4, Section 19.

9. Mr. Shoestock, the Buyer's agent in the transfer of the Property, did not attach the standard notification form to the Contract for signature by the prospective buyers of the Property. See Exhibit E, December 1, 2003 fax, and, November 29, 2003 fax; Exhibit J, Shoestock Depo, page 39, lines

11-25; page 40, lines 1-25; page 41, lines 1-15; page 60, lines 12-25; page 64, lines 9-25; page 65, lines 1-8.

10. There is no evidence of record of a signature acknowledgment by the prospective buyers of the Property as part of an entire Package. See Exhibit J, Shoestock Depo, page 34, lines 12 – 25; page 35, lines 1-12.

11. No person at any time has provided a complete Package to the Plaintiff for signature certification.

12. Page 11, the signature page of the Package, was separated from the Package by Mr. Richard Shoestock and faxed to Plaintiff [with instructions for completion, and for signature]. See Exhibit J, Shoestock Depo, page 38, lines 11-25; page 39, lines 11-25; page 40, lines 1-3; Exhibit 1, Century 21 Depo, page 29, lines 2-18; Exhibit E, December 1, 2003 fax.

13. Mr. Shoestock could have delivered the Package in full at the time when he delivered only page 11 of the Package to the Plaintiff since the entire Package was readily available to him. See Exhibit J, Shoestock Depo, page 41, lines 13-15; page 64, line 9-21. Exhibit I, Century 21 Depo, page 31, lines 3-7

II. **Century 21's Actions Do Not Conform With Federal Law Requirements For Lead Paint Disclosure**

A. **Standard Massachusetts Disclosure Form Requires Certification Signature Attached To Entire Package**

The federal requirements for sellers and their agents to disclose information concerning lead paint is cited under 42 U.S.C. Section 4852d, and the EPA regulations 40 CFR Chapter 1. See Exhibits G and H.

One essential question in this case is whether the standard Massachusetts form for lead paint disclosure (i.e., Package) must be itself attached to a purchase and sale contract when that contract is given to the prospective buyer(s) for their signature.

The federally mandated required information to be disclosed is contained in the pamphlet "*Protect Your Family From Lead In Your Home*", or its equivalent. See Exhibit H, EPA Regulations, 40 CFR Chapter 1, Section 745.107(a)(1). Also, the federal regulations require that a statement to certify receipt of the lead paint information be attached to any sales contract. See Exhibit H, EPA Regulations, 40 CFR Chapter 1, Section 745.113(a)(4)

In Massachusetts the equivalent standard disclosure form used for compliance with federal regulations is the Package. This Package specifically states that it "must be given in full to meet state and federal requirements". Also, the Package states that it includes the check list for the signature acknowledgement which is used to certify receipt of the Package itself. See Exhibit F, Package, page 1. The first ten pages of the Package contain all the relevant information concerning lead paint hazards. The fact that the Package

5

specifically states that the Package "must be given in full", "includes a check list to certify that prospective purchaser has been fully notified", and "[t]his certification should be filled out and signed" demonstrates a clear intent to avoid the possibility of only page 11 of the Package from being given to prospective buyers for signature without the prospective buyer being informed of the information contained in the first ten pages.

Also, it is clear that it is **not** EPA's intent that an agent provide only page 11 of the form **separately,** as indicated by the language that the Package *includes* the check list to be filled out: "includes a checklist to certify"… "*This* certification should be filled out". [emphasis added]. This could only mean that the certification that the purchaser should sign is the certification that was attached and came as page 11 in a *full* 11 page disclosure.

Although the federal regulation do not specifically require that the pamphlet "*Protect Your Family From Lead In Your Home*" be attach to a sales contract, given the specific requirements in the Package (i.e., that the certification page to be signed is part of the Package itself), in the EPA approved Massachusetts form the required information acknowledgement must be given attached to the ten (10) other pages contained in the Package.

Also, the language of the Contract itself, in Section 19, indicates that the standard form (Package) "is attached hereto", as discussed further in section **II. C** of this motion.

If, on the other hand, the Court supports Century 21's apparent interpretation that it is appropriate to remove page 11 from the Package and attach only page 11 to the Contract for the buyer's signature, then juries would be forced to decide whether an entire Package was given, and real estate agents could too easily circumvent their

6

disclosure requirements in their pursuit of sales commissions, especially with non-expert prospective buyers, as has been the case here. Also, it appears clear that it was <u>not</u> the intent of the EPA approved form that an agent, who may himself benefit from the sale of the property, provide only page 11 of the form **separately.** The question of whether any agents fulfilled their disclose obligation would then need to be decided by a jury charged to determine which witness is to be believed. This set of circumstances in which every case would have to be decided on a case-by-case basis and on the credibility and recollection of witnesses clearly could not have been the intent of the EPA approved Massachusetts disclosure form where it specifically states that the Package (including the certification page to be filled out) must be given in full.

### B. Federal Responsibility For Lead Disclosure Are Placed On Seller's And Their Agents.

The lead paint disclosure responsibilities of agents according to the federal regulations are outlined in EPA regulations 40 CFR Section 745.103 and 745.115 that define an agent and describe his/her responsibilities. The regulations specifically define an agent for purposes of 42 U.S.C. Section 4852d as "any party who enters into a contract with a **representative of seller**...for the purpose of selling...target housing. This term **does not apply to...purchaser's representative** who receives all compensation from the purchaser [emphasis added]." See Exhibit H Section 745.103, Definition of Agent   Mr.

7

Shoestock in fact represented the buyer in the Property transfer and had no responsibilities to the seller. See Exhibit J, Shoestock Depo, page 56, lines 19-25; 57, line 1; Exhibit C, signed agency disclosure

In this case Mr. Shoestock instructed Plaintiff on where to initial and complete the form and return it signed to complete the Contract. See Fact No. 12; Exhibit E, December 1, 2003 fax, page 1, "Please call me for instructions on where to initial and sign"; page 6, section titled "Purchaser's or Lessee Purchaser's Acknowledgment (initial)". Mr. Shoestock instructed Plaintiff to indicate certificate box (e). At no time before or after instructing Plaintiff to certify box (e) did he mention anything about reading or receiving the Package. Plaintiff, unsuspecting of any other missing information, trusted Mr. Shoestock's instructions without suspicion. Under similar circumstances any non-expert Buyer would have done the same. The Seller or Seller's agent DID NOT AT ANY TIME give the Package to the Plaintiff. See Fact No. 3.

This set of circumstances is intended to be avoided by the regulations defining agent responsibilities that the Seller's agents, and NOT the Buyer's agent, strictly be the source of the lead hazard disclosures. The fact that Buyer's agents are doing these disclosures should not be treated as a minor technicality. Plaintiff hopes that the Court would agree with him that legal interpretations should not weaken protection of the people by redefining terms away from their intended meaning and hold responsibility squarely on those intended by law.

8

### C. Contract Requires Attachment Of Massachusetts Standard Notification Form ("Package")

In the purchase and sale contract ("Contract") it is stated that the standard Massachusetts disclosure form, which the buyer acknowledges receipt, "is attached" to the Contract. See Fact No. 8.

This refers to a notification which (a) is a form and (b) is attached hereto. In the case here, what was attached thereto was page 11 of the Package (See Facts Nos. 9 and 12). The language "which is attached hereto", cited above in section 19 of the Contract, promises that whatever was attached to the Contract be the ***standard form***. Under these circumstances, Plaintiff had no reason to believe that page 11 of the Package was not the "standard notification form" due to it being the ***only form*** thereto attached. The meaning of the language "standard notification form", in these circumstances (Contract Section 19) can easily lead the prospective buyer to believe the "standard notification form" refers to page 11 of the Package that clearly identifies itself with the words "***This form*** is to be signed [emphasis added]". See Exhibit E, December 1, 2003 fax, page 6. Plaintiff was thereby acknowledging receipt of ***only that form*** by his signature,

Under these circumstances any potential purchaser would also come to the same conclusions. Plaintiff was unaware at this time that ***the form Plaintiff signed was not in fact the standard notification form as promised would be attached to the Contract by section 19 of same Contract.***

Further supporting the Plaintiff's belief at the time that the certification form was the "standard notification form" was that it does indeed notify a few things: the checked

9

boxes as well as the Federal Lead Warning Statement. See Exhibit D, completed signature page.

The interpretation of the law should not be such that evidence of acknowledgement of disclosure to the BUYER be based on the recollection of the agent involved, otherwise circumstances would be such that disclosure requirements could easily be circumvented, as has been the case here. Also, the only clearly **consistent** interpretation of the language of the Contract is that it is guaranteeing that the standard notification form is attached thereto.

### III. Conclusion

Clearly it is the intent of Congress to minimize the exposure to harmful lead for the population. It is regarded as a major hazard in our society as stated in page 1 of the Package: "PLEASE TAKE THE TIME TO READ THIS DOCUMENT. LEAD POISONING IS THE NATION'S NUMBER ONE ENVIRONMENTAL DISEASE AFFECTING CHILDREN. DON'T GAMBLE WITH YOUR CHILDREN'S FUTURE." Congress clearly intended to do their best to minimize harm to the public. By weakening these laws from their initial intent would be directly contrary to the intent of the Congress and the welfare of the people. It would provide the opportunity for abuse. In order to uphold the law's intent that information on lead's dangers be disclosed with the most seriousness it is just that the Court, as a matter of law, bar these opportunities for exploitation and to easily avoid disclosures once they become apparent. The legal requirements are intended to protect those who may be ignorant of the dangers of lead

paint. Plaintiff hopes the Court sees the ability for easily avoiding mandatory lead paint disclosures if Century 21's apparent interpretations of the law are adopted.

For any one, or all, of the above reasons, based on the above material facts in which there are no genuine issues to be tried, and the Federal Law and Regulations for disclosure of lead paint hazards, Plaintiff respectfully requests the Court grant his motion for Partial Summary Judgment as a matter of law finding Century 21 liable under 42 U.S.C. section 4852d.

For The Plaintiff,

*Maarten N. Pellegrini - pro se*
Maarten N. Pellegrini, Plaintiff *pro se*
56 Liberty Street, North Adams, Massachusetts 01247
774-364-0081

## CERTIFICATE OR SERVICE

I, Maarten N. Pellegrini, certify that on January 31, 2006, a copy of the above document was mailed by first class mail, postage prepaid, to counsel of record for Century 21 at the address below:

    Law Office of Donald E. Phillips
    Attn: Richard F. Faille
    One Monarch Place,
    1414 Main Street, Suite 550
    Springfield, MA   01144

_/s/ Maarten N. Pellegrini_

Maarten N. Pellegrini

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.