UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                      *
MAARTEN N. PELLEGRINI and             *
NICOLA M. PELLEGRINI,                 *
              Plaintiffs              *  Case Number:  05CV30077-MAP
                                      *
vs.                                   *
                                      *
CENTURY 21, HAROLD DUPEE              *
REALTORS,                             *
              Defendant               *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

This is basically a one issue case. That issue is whether the defendant willfully violated the disclosure requirements for lead paint contained in 42 U.S.C.A. §485 2d. That title provides in pertinent part:

"(a)     Lead disclosure in purchase and sale or lease of target housing

(1)     Lead-based paint hazards

Not later than 2 years after October 28, 1992, the Secretary and the Administrator of the Environmental Protection Agency shall promulgate regulations under this section for the disclosure of lead-based paint hazards in target housing which is offered for sale or lease. The regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall—

**(A)** provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection agency under section 406 of the Toxic Substance Control Act [15 U.S.C.A. §2686];

**(B)** disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor; and

**(C)** permit the purchaser a 10-day period (unless the parties mutually agree upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

(2)    Contract for purchase and sale

Regulations promulgated under this section shall provide that every contract for the purchase and sale of any interest in target housing shall contain a Lead Warning Statement and a statement signed by the purchaser that the purchaser has –

**(A)** read the Lead Warning Statement and understands its contents;

**(B)** received a lead hazard information pamphlet; and

**(C)** had a 10-day opportunity (unless the parties mutually agreed upon a different period of time) before becoming obligated under the contract to purchase the housing to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

(3)    Contents of Lead Warning Statement

The Lead Warning Statement shall contain the following text printed in large type on a separate sheet of paper attached to the contract:

"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning.  Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral

problems, and impaired memory.  Lead poisoning also poses a particular risk to pregnant women.  The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based pain hazards.  A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

(4)     Compliance assurance

Whenever a seller or lessor has entered into a contract with an agent for the purpose of selling or leasing a unit of target housing, the regulations promulgated under this section shall require the agent, on behalf of the seller or lessor, to ensure compliance with the requirements of this section."

There does not appear to be an issue compliance with (2) and (3) and with (1)(B) and (C) for the plaintiff signed a receipt for the Warning Statement and other statement requirements. The only issue deals with (A) above and that is whether the defendant supplied the purchaser with a lead paint information pamphlet.

The plaintiff claims that he was not supplied with the pamphlet and the defendant claims that the pamphlet was given to the co-buyer (and former plaintiff) Nicola Pellegrini.

Nothwithstanding the foregoing, the defendant also contends that the plaintiff cannot prove an essential element of his case.

"The statute provides (b) Penalties for violations. . . . .

(3) Civil liability

Any person who knowingly violates the provisions of this section shall be joint and severely liable to the purchaser or lessee in an amount equal to three times the amount of damages incurred by such individual."

On the issue of the supplying the buyer with the required pamphlet, the testimony of Richard Shoestock[1] was quite clear. Mr. Shoestock testified that he had a meeting with Gerald Pellegrini (father of plaintiff and Nicola) and Nicola Pellegrini[2] the evening that the parties first viewed the property in question. (Depo of Shoestock pgs. 26-29) He testified that they had a discussion concerning lead paint, home inspections and the likes and at that time, he gave the required pamphlet to the co-buyer, Nicola Pellegrini.

This is the gravamen of the plaintiff's case, that they were not given the pamphlet. If in fact that is true, the plaintiff's entire case fails.

To avoid summary judgment, an opposing party may not rest on pleadings or general denials but must set forth by way of affidavits, specific facts showing that there is no triable issue. Bare assertions of inferences are not enough to raise a genuine issue of material fact. Community National Bank v. Dawes, supra. It is not sufficient to rely on conclusions, assertions in legal memorandum, allegations in pleadings or the hope that the trial judge might draw contradictory inferences from materials in the records. James v. Wampanoog Tribal Counsel of Gay Head, Inc., 23 Mass. App. Ct. 122, 128.

Furthermore, to the extent affidavits are utilized by either side, the affiant must have personal knowledge or admissible, specific facts and be competent to testify to those specific facts. Id. By the same token, hearsay testimony and opinion testimony that could not be

---

[1] Mr. Shoestock was an independent contractor who worked at the defendant's business location (Depo of Shoestock p. 13-14)
[2] Originally, Shoestock testified that the meeting was with Maarten but later changed that to Nicola. (Depo of Shoestock p.66-67)

admitted at trial must also be disregarded.  Gillentine v. McKeand, 426 F.2d 717, 722 (lst Cir.

1970); Rossi v. Trans World Airlines, 507 F.2d 404, 406 (9th Cir. 1974 and cases cited.

Neither will unsupported allegations suffice to withstand a motion for summary

judgment. Fed.R.Civ.P. 56(e).  Thus, although this Court must draw all inferences in favor of the

Plaintiff, "...neither 'vague allegations and conclusory statements nor assertions of inferences not

based on underlying facts will suffice' to sustain the claims in favor of, or against, granting the

motion." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) citing Adickes v. S.H. Kress &

Co., 398 U.S. 144, 158-159 (1970).

The United States Supreme Court, in a trilogy of opinions in June, 1986, recognized the

importance of flushing out cases prior to trial where, after adequate time for discovery, the

Plaintiff will not be able to present sufficient evidence to warrant a jury finding in his favor.  In

these cases the Court, in substance, employed the directed verdict standard in evaluating the

Plaintiff's evidence prior to trial via a motion for summary judgment.  All three cases involved

complex litigation, i.e. an antitrust action, a toxic exposure products liability case, and a libel

action. Matsushita Electric Industry Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct.

1348 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986).  In Anderson, the Court clearly stated that the

standard for granting summary judgment "...mirrors the standard for a directed verdict under the

Federal Rules of Civil Procedure, 50(a), which is that the Trial Judge must direct a verdict if,

under the governing law, there can be but one reasonable conclusion as to the verdict." Id.  106

S.Ct. at 2511.  In short, the issue before the Court is whether the evidence, when viewed in a

light most favorable to the Plaintiff, warrants a finding for the Plaintiff.  This is the same

standard employed under the Massachusetts Rules of Civil Procedure, Rule 50(a).  The rationale

for the foregoing was made crystal clear by the Supreme Court in the <u>Celotex</u> case when it

stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party who
> fails to make a showing sufficient to establish the existence of an element
> essential to that party's case, and on which that party will bear the burden of proof
> at trial.  In such a situation, there can be "no genuine issue as to any material
> fact", since a complete failure of proof concerning an essential element of the
> non-moving party's case necessarily renders all other facts immaterial.  The
> moving party is "entitled to judgment as a matter of law" because the non-moving
> party has failed to make a sufficient showing of an essential element of his case
> with respect to which he has the burden of proof.

<u>Id</u>., 106 S.Ct. at 2552-53.  Moreover, the Court, rejecting the notion that "metaphysical doubt as

to material facts" could defeat a Rule 56 motion, stressed that the issue of fact must be

"genuine".  The non-moving party must come forward with "...specific facts showing that there

is a <u>genuine issue for trial</u>." <u>Matsushita Electric Industry Co. Ltd. v. Zenith Radio Corp.</u>, <u>supra</u> at

1356 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).  Defendant respectfully urges this

Court to view its Rule 56 motion under these standards.

A party moving for summary judgment in a case in which the opposing party will have

the burden of proof at trial is entitled to summary judgment if he demonstrates that the party

opposing the motion has no reasonable expectation of proving an essential element of that

party's case.  To be successful, a moving party need not submit affirmative evidence to negate

one or more elements of the other party's claim.  The moving party may show that the opposing

party has no reasonable expectation of proving an essential element of that party's case.

<u>Kourouvacilis v. General Motors Corporation</u>, 410 Mass. 706.

Notwithstanding the fact that the pamphlet was given to the co-buyer, assuming

arguendo that the pamphlet was not given, the plaintiff cannot possible make out another

essential element of his case. The plaintiff cannot prove that the defendant <u>knowingly</u> violated

the provisions of the act so as to impose liability on the defendant. 42 U.S.C.A. §3545(M)(5) states: "The term "knowingly" means having actual knowledge of or acting with deliberate ignorance of or reckless disregard for the prohibitions under this section."  Knowingly in the contents of this statutory scheme has also been defined, "Knowingly as commonly used and interpreted means that defendant was aware of his or her conduct and that defendant did not perform it merely through ignorance, mistake or accident."  Smith v. Caldwell Banker Real Estate, 122 F. Supp. 2d 267, 273.  There is absolutely no evidence at all that the defendant knowingly violated the statute and quite to the contrary, the evidence is clear that the plaintiff was in fact made well aware of the fact that there was lead paint in the property, well before purchasing it.

On at least four and probably more occasions, the plaintiff was informed that the property he purchased probably contained lead paint.

On his first visit to view the premises, a principal of the defendant, Mary Jane Dalmaso pointed out to the plaintiff an area where paint was chipped and that it was probably lead paint. The plaintiff's response was that he wasn't concerned because there weren't going to be any children under six living there. (Depo of plaintiff pgs. 15-16)  This would certainly mitigate against any attempt to not disclose or knowingly violate the Lead Paint Statute.

The next mitigating factor comes with the Property Transfer Notification Certificate (Exhibit 1 to plaintiff's Depo).  The plaintiff admitted reading and signing the Certificate (Depo of plaintiff, pgs. 17-18).  This is important in a variety of aspects.  First, it contains the mandatory Federal Warning concerning lead paint, 42 U.S.C.A. §485 2d (a)(3).  Next, it recites that the purchaser has been informed of the possible presents of lead paint by the broker.  It also recites that the purchaser has waived the right to a risk assessment for lead paint.  Lastly, it

recites that the purchaser has received the Property Transfer Lead Paint Notification.  (Exhibit 2 to plaintiff's depo).  The plaintiff now repudiates this and says that while acknowledging that he received the Notification, that of fact he did not.  Certainly, if the defendant were trying to willfully violate the statute, it would not bring to broad daylight the existence and receipt of the Notification.

Following along, the plaintiff signed a written Purchase and Sale Agreement (Exhibit 3 of plaintiff's depo).  He testified that he read and understood the document before he signed it. (Depo of Plaintiff, pgs. 22-23).  Again this document unequivocally states that the purchaser acknowledges receipt of the Notification concerning lead paint (pgs. 2-3) and that the purchaser has been informed of the possible presents of lead paint and has waived the inspection for lead paint.  The plaintiff now repudiates this but it certainly goes to the issue of willfulness.

As was his right, the plaintiff hired a registered Massachusetts Home Inspector, a Neil Segula to do an inspection of the property before purchasing it and he rendered a report to the plaintiff which the plaintiff reviewed (Exhibit 4, to plaintiff's depo at pgs. 28-30) in which the inspector unequivocally stated "There is likely lead paint on the property". (Exhibit 4, p.4)  The plaintiff testified that "yes" he was informed about the lead paint from his inspector, Neil Segala.

The plaintiff unequivocally acknowledges that at least three people, including two from the defendant informed him of the probability of lead paint.  The plaintiff testified:

> Q:    *Were you told it was likely"*
>
> A.    *Yes, I was told by three parties, Dick Shoestock, Mary Jane and Neil that there was a good chance.  I took that as understanding that there was a good chance that there was lead paint.*  (depo of plaintiff p. 32)

## CONCLUSION

To summarize, the plaintiff acknowledged receiving the Notification (pamphlet) in writing on two occasions. Received another notice in the Purchase and Sales Agreement and was told by three people of the likelihood of lead paint on the premises. Taking these mitigating factors into consideration and the fact that the plaintiff has <u>no</u> evidence that the defendant willfully violated the statute, then he has failed to demonstrate an essential element of his case and that is a willful violation of the statute.

It is therefore submitted that the plaintiff cannot make out an essential element of his case making it ripe for the entry of Summary Judgment for the defendant.

## EMOTIONAL DISTRESS

While the complaint in this case is inartfully drawn, a very broad and liberal reading could be said to make a claim for negligent infliction of emotional distress. If the Court should not agree with the arguments heretofore made, then at least a partial summary judgment should issue on the emotion distress claim.

In Massachusetts, claims for emotional distress, absent physical harm are greatly limited. The seminal case in this regard is <u>Payton v. Abbott Labs,</u> 386 Mass. 540, 437 N.E. 2d 171. The specific hold in that case is:

"We therefore conclude, on the basis of the preceeding analysis, that in order for any of these plaintiffs to recover for negligently inflicted emotional distress, she must allege and prove she suffered physical harm as a result of the conduct which caused the emotional distress. We answer, further, that a plaintiff's physical harm must either cause or be caused by the emotional distress alleged, and that the physical harm must be manifested by objective symptomatology and substantiated by expert medical testimony." At 181.

With that in mind, let us view the plaintiff's evidence.  In response to interrogatories and document request dealing with the plaintiff's claim of emotional distress, the plaintiff produced two documents to support his claim.  One is the result of a blood test of the plaintiff's blood for lead.  This result shows that the plaintiff has a normal lead level in his blood.

The plaintiff has identified Barbara Holian, LMHC as his only expert witness in this case with regard to the emotion distress claim and supplied a one page note of hers as his only medical record.  This does not even remotely come close to the requisites of <u>Payton.</u>  First, the patient was not even the plaintiff but his mother Isabel.  There is no mention of physical harm manifested by objective symptomatology and absolutely no substantiation by medical testimony.

The plaintiff's proof of any recognizable claim for negligent infliction of emotion distress falls far short of its mark and Summary Judgment should be issued to the defendant dismissing the claim.


                              THE DEFENDANT
                              By Its Attorney


                              /s/ Richard F. Faille
                              Richard F. Faille, Esquire, BBO#: 157640
                              Law Offices of Donald E. Phillips
                              1414 Main Street, Suite 550
                              Springfield, MA 01144
                              (413) 730-6350
                              Richard.Faille@stpaul.com

## **CERTIFICATE OF SERVICE**

I, Richard F. Faille, Attorney for the Defendant, hereby certify that on February 5, 2007, I copied the foregoing Memorandum by mailing a copy of the same, postage prepaid, to:

Maarten N. Pellegrini, Pro Se
56 Liberty Street
North Adams, MA  01247


/s/ Richard F. Faille