UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
MAARTEN N. PELLEGRINI           \*
    Plaintiff                              \*
                                              \*   Case Number: 05CV30077-MAP
                                              \*
vs.                                         \*
                                              \*
CENTURY 21, HAROLD DUPEE   \*
REALTORS,                              \*
    Defendant                          \*
                                              \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS, CONCISE STATEMENT, AND ARGUMENT**

Plaintiff, Maarten N. Pellegrini ("Plaintiff"), replies to Defendant's Opposition To Plaintiff's Statement Of Material Facts, Concise Statement, and Argument ("Century 21 Opp.").

Century 21, Harold Dupee Realtors ("Century 21") claims (Century 21 Opp. at 1) that Plaintiff's fact # 10 is not true. Century 21 states (Century 21 Opp. at 2), "when the plaintiff and his brother were ready to make an offer, an original of the Federal Disclosure (Exhibit "D" to the plaintiff's papers) was given to the plaintiff and his brother for signature." This statement is obviously incorrect since Exhibit D to Plaintiff's Motion For Partial Summary Judgment is ***not*** the Federal Disclosure.

Century 21 asserts (Century 21 Opp. at 2) that the "pamphlet [standard notification form from the Massachusetts Department of Public Health concerning lead paint, previously referred to as "Property Transfer Lead Paint Notification", and the "Package"] disclosure was given by

1

Century 21 Associate, Richard Shoestock to the plaintiff's brother and co-buyer, Nicola Pellegrini…".

In addition to Plaintiff's claim that Century 21's alleged disclosure did not occur, as well as other claims made in his pleadings, Plaintiff further claims that Century 21 is prohibited, as a matter of law, from asserting that the standard notification form concerning lead paint is more than page 11 of the Package.

***BY LONG STANDING LEGAL DOCTRINE OF ESTOPPEL, CENTURY 21 IS PRECLUDED AS A MATTER OF LAW FROM ASSERTING THAT THE STANDARD LEAD PAINT NOTIFICATION IS MORE THAN ONLY PAGE 11 OF THE PACKAGE***

It is a well-established principle, as a matter of law, that a party is forbidden by estoppel to assert a fact or position that is inconsistent with prior positions, attitudes or courses of conduct resulting in detriment to another party. See *Gural v. Engle*, 25 A.2d 257, 261, and *Brand v. Farmers Mut. Protective Ass'n of Texas* 95 S.W.2d 994, 997. Estoppel may be based on settlement of facts by force of entering into contract. See *Masterson v. Bouldin*, 151 S.W.2d 301, 307. Estoppel may be invoked by acts done under or in performance of contract. See *Jackson v. United Gas Public Service Co.*, 198 So. 633, 640; *Finch v. Smith*, 58 P.2d 850, 851. Estoppel may be invoked by acknowledgements of matters of fact. See *McDonald v. Richard*, 13 So.2d 712, 718. Estoppel may be invoked by party who relied on act, word or conduct of other party. See *Gosney v. Metropolitan Life Ins. Co.*, 114 F.2d 649, 652; *In re Sarvey's Estate*, 219 N.W. 318, 321. Estoppel may be invoked against party whose conduct is of such nature that reasonable prudent person would have been deceived. See *Cellized Floors v. Glens Falls Indemnity Co. of New York*, 156 A. 845, 846; *Agnew v. Mullenix*, 11 So.2d 106,

2

107. Estoppel may be invoked for false representation or wrongful silence or concealment. See *Van Antwerp v. United States*, 92 F.2d 871, 875; *Noxon v. Cockburn*, 147 S.W.2d 872, 875; *Weber v. Fohl*, 41 N.E.2d 648, 650, 651; *Spradling v. Spradling*, 190 S.E. 537, 540. Estoppel may be invoked when a party against whom estoppel is invoked has received a profit or benefit or party invoking estoppel has changed his position to his detriment. See *Wertz v. Shane*, 249 N.W. 661; *Lebold v. Inland Steel Co.*, 125 F.2d 369, 375; *Garmon v. Fitzgerald*, 151 So. 726, 728. Also, estoppel may be invoked through careless and culpable conduct and does not require a showing of fraudulent intent. See *Fleishbein v. Western Auto Supply Agency*, 65 P.2d 928; *New Jersey Suburban Water Co. v. Town of Harrison*, 3 A.2d 623, 625-627; *Mancini v. Thomas*, 34 A.2d 105, 109.

The purchase and sale contract ("Contract") for the property at 56 Liberty Street, North Adams, MA ("Property"), which was signed by Century 21 real estate agent Francis Buckley and faxed to Plaintiff by Century 21 real estate agent Richard Shoestock, clearly represented to the Plaintiff that the standard lead paint notification was attached to the Contract. The language of the Contract states, "the SELLER and broker(s) have (a) provided to the BUYER the standard notification form from the Massachusetts Department of Public Health concerning lead paint, the certificate for which BUYER has signed, which is attached hereto;". See Plaintiff's Motion For Partial Summary Judgment Fact # 8. Plaintiff believed, as would a reasonable and prudent person, that the clause "which is attached hereto" referred to **both** the certificate and the standard notification form.

3

### *Rule of Last Antecedent Applies To The Contract In This Case*

Plaintiff's belief, regarding the acknowledgement of facts in the Contract, is supported by *2A Sutherland Statutory Construction* section 47.33 at 270 (5th ed. 1992) (commonly referred to as the rule of "last antecedent"). It is obvious that, if the meaning of the Contract was for the certificate page of the standard notification to be the only attachment, a comma **would not have been added** *to separate* the phrase "which is attached hereto" from the immediately preceding antecedent "the certificate…". Therefore, the act of inserting the comma preceding "which is attached hereto" has ***no other purpose*** than to indicate inclusion of the standard notification form as an attachment to the Contract. This is evidence that the qualifying phrase "which is attached hereto" refers to "all antecedents instead of only to the immediately preceding" one (*Id.*). Furthermore, there is a large body of case law in support of Plaintiff's belief. For instance:

See Exhibit A, *WAID v. STATE 2000* WY 15 996 P.2d 18, paragraph 18, "That phrase is set off by commas, and is separated from the preceding language by a comma leading to a grammatical interpretation that the legislature intended the phrase as a modifier for all preceding phrases."

Also see here attached Exhibit A, *Tietema v. State* 1996 WY 149 926 P.2d 952, paragraph 10, "In accordance with traditional rules of grammatical construction, a comma preceding a prepositional phrase denotes that the phrase pertains to all antecedents;".

Also see here attached Exhibit B, excerpts from *TAKING TEXT AND STRUCTURE REALLY SERIOUSLY* , 74 Tex. L. Rev. 237 (1995) at 246, "It seems most charitable to begin

with the presumption that commas were intended to be meaningful, so that the burden of proof should be on the person who wishes to ignore certain commas as superfluous."

Due to the conduct of attaching *only page 11* of the Package to the Contract, Plaintiff clearly was lead to believe, and relied on the fact that, the standard lead paint notification was **the single attached page ONLY**. See Plaintiff's Motion for Partial Summary Judgment, Exhibit E.

As a result of these beliefs, Plaintiff was deceived as to the **true content** of the standard lead paint notification. Plaintiff relied on Century 21's representations while acknowledging the certificate and purchasing the property. This placed Plaintiff in a detrimental position. Under these circumstances [settlement of facts by force of entering into Contract, acts done in performance of Contract, conduct that reasonable person would have been deceived, conduct of wrongful concealment, and Plaintiff's reliance thereon to his detriment or Century 21's benefit], Plaintiff is entitled to the benefits of estoppel by law. Century 21 cannot now claim, contrary to their prior representations, that the standard lead paint notification contains more that **the single page 11 of the Package**.

Century 21 also asserts that Richard Shoestock was not the "purchaser's representative as defined in 42 U.S.C. section 4852d because the plaintiff in fact did not pay compensation to any real estate agent...", and has asserted that Mr. Shoestock has received compensation "paid by the seller". See Century 21 Opp. at 3, and Affidavit of Mary Jane Delmaso # 3.

*BY THE DOCTRINE OF ESTOPPEL, CENTURY 21 IS PRECLUDED AS A MATTER OF LAW FROM ASSERTING THAT RICHARD SHOESTOCK WAS NOT A PURCHASER'S REPRESENTATIVE AND RECEIVED COMPENSATION PAID BY THE SELLER*

    Plaintiff additionally claims here that Century 21 is prohibited, as a matter of law, from asserting that Richard Shoestock was not the purchaser's representative, and from asserting that Richard Shoestock received compensation paid by the seller in the transaction of the Property. Century 21 and Richard Shoestock clearly represented to Plaintiff that Richard Shoestock was the "Buyer's Agent" and Francis Buckley was the "Seller's Agent" in the transaction of the Property. Richard Shoestock signed an acknowledgement stating that "I have informed the above named consumer [Maarten N. Pellegrini and Nicola M. Pellegrini] that I am a Buyer's Agent.". Also, Francis Buckley acknowledged being the seller's agent in the Contract. See here attached Exhibit C, "Mandatory Agency Disclosure – Agency Relationship", page 1; Plaintiff's Motion for Partial Summary Judgment, Exhibit E, December 1, 2003 fax, page 6. These representations were made in writing.

    Plaintiff was also informed in writing that "Buyer's Agents" and "Seller's Agents" had ***distinct and separate obligations and responsibilities*** (i.e., "undivided loyalty" for both Buyer's Agents and Seller's Agents to their respective clients). See here attached Exhibit C, page 2. Also, Century 21 was completely *silent* as to any compensation paid to Mr. Shoestock by the seller.

    Based on these representations, Plaintiff was lead to believe, as would any reasonable prudent person, that Mr. Shoestock received *no* compensation from the seller and that Mr. Shoestock must have been compensated from the *buyer(s)* through Century 21 who represented the buyer(s) also (See Century 21 Opp. Affidavit of Mary Jane Delmaso # 2). Any other

conclusion would have created a clear conflict of interest and a conflict of Mr. Shoestock's "undivided loyalty" to the buyer(s). Plaintiff trusted and relied on the fact that Mr. Shoestock had no conflict of interest and had "undivided loyalty" to Plaintiff. Based on this trust, Plaintiff was induced by *specific instruction* on where to complete and sign the Contract and page 11 of the Package placing him in a detrimental position. See Plaintiff's Motion For Partial Summary Judgment, Exhibit E, December 1, 2003 fax. Page 1. Also based on these representations and trust, Century 21 received the benefit of securing Plaintiff's agreement to the Contract.

The representation that **Century 21** acted as a dual-agent, does **not** at all represent that **Mr. Shoestock** acted as a dual-agent. The Mandatory Agency Disclosure acknowledgement (Exhibit A) unequivocally represented the fact that Mr. Shoestock was the **Buyer's agent** and **not a dual-agent**. This conduct represents an acknowledgement of fact.

Under these circumstances [prior acknowledgement of fact, Plaintiff's reliance on this acknowledgement to his detriment, conduct on the part of Century 21 of such a nature that reasonable prudent person would have been deceived with respect to Mr. Shoestock's agency relationship, Century 21 received a benefit], Plaintiff is entitled to the benefits of estoppel by law. Due to prior conduct, Century 21 cannot now claim that Mr. Shoestock was not the purchaser's representative, and cannot now claim that Mr. Shoestock received compensation from the seller in the transfer of the Property.

In conclusion, for all the reasons stated above and stated in Plaintiff's previous pleadings, Plaintiff's Motion for Partial Summary Judgment should be allowed in light of the fact that there are no genuine issues of material fact to be tried and that only one possible verdict can be found.

7

For The Plaintiff,

_____ - pro se
Maarten N. Pellegrini, Plaintiff *pro se*
56 Liberty Street
North Adams, Massachusetts 01247
774-364-0081

## CERTIFICATE OF SERVICE

I, Maarten N. Pellegrini, certify that on February 27, 2007, a copy of the above document was mailed by first class mail, postage prepaid, to counsel of record for Century 21 at the address below:

    Law Office of Donald E. Phillips
    Attn: Richard F. Faille
    One Monarch Place,
    1414 Main Street, Suite 550
    Springfield, MA   01144

_____
Maarten N. Pellegrini

8

# EXHIBIT A

[¶12] We examine this record from the point of view most favorable to the party who opposed the motion, giving that party the benefit of all favorable inferences that may fairly be drawn from the record. Davis v. Wyoming Medical Center, Inc., 934 P.2d 1246, 1250 (Wyo. 1997). The record review has satisfied this Court that there is no genuine issue as to any material fact that would have the effect of establishing or refuting an essential element of the claim or defense asserted by the parties. Century Ready-Mix Co. v. Campbell County School Dist., 816 P.2d 795, 799 (Wyo. 1991) (quoting Doud v. First Interstate Bank of Gillette, 769 P.2d 927, 928 (Wyo. 1989)). We then determine whether the prevailing parties were entitled to judgment as a matter of law. In evaluating entitlement to judgment as a matter of law, we apply our rule that if the summary judgment can be upheld, under the record presented, upon any proper legal theory, we do so. Century Ready-Mix Co., 816 P.2d at 799; Reeves v. Boatman, 769 P.2d 917, 918 (Wyo. 1989).

[¶13] We turn initially to the rationale articulated by the district court for the grant of summary judgment to WYDOT and Burlington. In the course of its Findings of Fact and Order Granting Defendants' Motions for Summary Judgment, the district court ruled that a permanent taking was a necessary element of a claim for inverse condemnation. The court invoked Goodman v. United States, 113 F.2d 914, 917 (8th Cir. 1940) in support of that determination. In Goodman, the United States Court of Appeals for the Eighth Circuit held that temporary flooding did not constitute a taking for purposes of presenting a claim under inverse condemnation. Indeed that is an accurate reading of Goodman, but this doctrine is not viable in Wyoming because of subsequent legislation and precedent making Goodman, its progenitors, and any progeny inapplicable with respect to inverse condemnation actions in Wyoming.

[¶14] In 1981, the Wyoming Eminent Domain Act, Wyo. Stat. Ann. §§ 1-26-501 through 1-26-516 (Lexis 1999), became law. The final section of the Wyoming Eminent Domain Act was entitled "Action for inverse condemnation," and it provides:

> When a person possessing the power of condemnation takes possession of or damages land in which he has no interest, or substantially diminishes the use or value of land, due to activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation, the owner of the land may file an action in district court seeking damages for the taking or damage and shall be granted litigation expenses if damages are awarded to the owner.

[¶15] Wyo. Stat. Ann. § 1-26-516 (emphasis added). The Wyoming Eminent Domain Act encompasses the entire subject of eminent domain, and abrogates any earlier contrary decisions. L.U. Sheep Co. v. Board of County Com'rs of County of Hot Springs, 790 P.2d 663, 669 (Wyo. 1990).

[¶16] When this Court is tasked with the interpretation of a statute, we initially invoke this rule of statutory interpretation:

> We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an "inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.'" Parker Land and Cattle Company v. Wyoming Game and Fish Commission, 845 P.2d 1040, 1042 (Wyo. 1993) (quoting Rasmussen v. Baker, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia.

[¶17] State Dept. of Revenue and Taxation v. Pacificorp, 872 P.2d 1163, 1166 (Wyo. 1994). We have followed that rule consistently since it was articulated. Flores v. Flores, 979 P.2d 944, 946 (Wyo. 1999); Cargill v. State, Dept. of Health, Div. of Health Care Financing, 967 P.2d 999, 1001 (Wyo. 1998); Hill v. Value Recovery Group, L.P., 964 P.2d 1256, 1258 (Wyo. 1998); State ex rel. Wyoming Workers' Safety and Compensation Div. v. Bruhn, 951 P.2d 373, 376 (Wyo. 1997). It is clear from the plain language of Wyo. Stat. Ann. § 1-26-516 that our legislature intended to allow recompense to an owner of property not only for permanent takings, but also for damage or diminution in value. The Waid group alleged all three of these premises for compensation in the complaint that was filed. We hold that, under the statute, no permanent taking is required in order for the Waid group to maintain the action for inverse condemnation. This ruling leads to a consideration of whether this Court can affirm the grant of summary judgment for WYDOT and Burlington under any other proper legal theory.

[¶18] The summary judgment in favor of Burlington can be upheld on the basis of the statutory language. The record discloses that U.S. Highway 20 runs along the western border of the Waid group property, and the railroad line lies to the west of the highway, separated from the Waid group property by U.S. Highway 20. The critical

phrase in the inverse condemnation statute is "due to activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation." Wyo. Stat. Ann. § 1-26-516. That phrase is set off by commas, and is separated from the preceding language by a comma leading to a grammatical interpretation that the legislature intended the phrase as a modifier for all preceding phrases. If the initial comma were not present, the language would properly be construed as modifying only the immediately preceding phrase. Tietema v. State, 926 P.2d 952, 954 (Wyo. 1996).

[¶19] The rule with respect to a modifier, like this adverbial clause, is perhaps best stated in 2A Sutherland Statutory construction § 47.33 at 270 (5th ed. 1992):

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.

[¶20] Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.

[¶21] (Footnotes omitted and emphasis added.) This proposition was quoted and applied in a dissenting opinion in Battlefield, Inc. v. Neely, 656 P.2d 1154, 1165 (Wyo. 1983) (Thomas, J., dissenting), and it was relied upon as authoritative in Tietema, 926 P.2d at 954.

[¶22] In a different grammatical context we said, speaking to the significance of the placement of a comma:

> The application of commonly accepted rules of grammar would indicate that, by the proviso found in § 12-6-102(a), which reads,
> 
> "[n]o adult shall transport, or have in his possession or control, any alcoholic liquor or malt beverage, with the intent of furnishing the same to any minor, while operating or occupying a motor vehicle,"
> 
> the legislature intended the phrase "while operating or occupying a motor vehicle" to modify the word "adult." Since the phrase is set off by a comma, it is a dangling elliptical clause unless it is assumed to refer to "adult," which is the subject of the main clause. J. Hodges & M. Whitten, Hodge's College Handbook (7th ed. 1972). In contrast, if the comma were not there, the phrase would modify the word "minor." While it is true that a court does not sit as a "panel of grammarians" to review statutes, neither is the judiciary permitted to regard ordinary principles of English prose as irrelevant when construing a statute. Flora v. United States, 362 U.S. 145, 150, 80 S.Ct. 630, 633, 4 L.Ed.2d 623, reh. denied 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 901 (1960). Individual members of this court have previously noted this concept. Battlefield, Inc. v. Neely, 656 P.2d 1154 (Wyo. 1983) (Thomas, J., dissenting); Matter of Voss' Adoption, 550 P.2d 481 (Wyo. 1976) (Guthrie, C.J., dissenting, with whom McClintock, J., joined). See also Kindler v. Anderson, 433 P.2d 268 (Wyo. 1967).

State v. Denhardt, 760 P.2d 988, 990 (Wyo. 1988).

[¶23] Burlington emphasizes that the geography of the area forecloses a conclusion that it engaged in activity on land adjoining the Waid group property, and for that reason it is not a proper defendant in an inverse condemnation proceeding. We are satisfied that the legislature intended to enact the requirement that the defendant take, damage, or diminish by "activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation." Wyo. Stat. Ann. § 1-26-516. The summary judgment in favor of Burlington is affirmed because it did not conduct activities on adjoining land. Indeed, scenarios can be visualized in which it would be desirable to permit an inverse condemnation when the activities were conducted on a non-adjoining parcel, but the consequences of that situation appropriately should be addressed to the legislature rather than to this Court.

[¶8]     In construing the language

> [a]ny person under the age of twenty-one (21) years who has any alcoholic or malt beverage in his possession or who is drunk or under the influence of alcoholic liquor, malt beverages or a controlled substance on any street or highway or in any public place is guilty of a misdemeanor[,]

we find that two independent misdemeanor offenses are included: 1) any person under twenty-one years of age is prohibited from possessing alcoholic or malt beverages, regardless of location; and 2) any person under twenty-one years of age is prohibited from being drunk or under the influence of alcoholic liquor, malt beverages or a controlled substance on any street or highway or in any public place.

[¶9]     The bases for this conclusion are threefold. First, the prohibition against possession of alcoholic or malt beverages is set apart from the prohibition against being drunk or under the influence of alcoholic liquor, malt beverages or a controlled substance by the disjunctive use of the word "or." We have addressed the effect of the use of the word "or" previously, stating:

> Webster defines "or" as a function word to indicate (1) an alternative between different or unlike things, states or actions; (2) choice between alternative things, states or courses. The word "or" is ordinarily used as a disjunctive generally corresponding to "either" as "either this or that." Where two clauses or phrases are expressed in the disjunctive, they are coordinate and either is applicable to any situation to which its terms relate. Generally, use of the disjunctive indicates alternatives and requires separate treatment of those alternatives, hence a clause following a disjunction is considered inapplicable to the subject matter of the preceding clause.

Olsten Staffing Serv., Inc. v. D.A. Stinger Serv., Inc., 921 P.2d 596, 600 (Wyo. 1996) (quoting Matter of Voss' Adoption, 550 P.2d 481, 485 (Wyo. 1976)). Because the misdemeanor possession clause is set apart from the misdemeanor of being drunk or under the influence clause by a disjunctive "or," the language "on any street or highway or in any public place" only concerns the misdemeanor under the influence clause. The plain meaning of the language concerning possession is that no one under the age of twenty-one may possess alcoholic or malt beverages, regardless of location.

[¶10]    The second basis for our conclusion rests upon the fact that no comma precedes the prepositional phrase "on any street or highway or in any public place." In accordance with traditional rules of grammatical construction, a comma preceding a prepositional phrase denotes that the phrase pertains to all antecedents; the corollary of such rule is that when a comma does not precede a prepositional phrase, the phrase applies only to the immediately preceding antecedent and to no others. See 2A Sutherland Statutory Construction § 47.33 (Supp. 1982). The absence of a comma, combined with the use of the disjunctive "or," leads us to the conclusion that the legislature intended the phrase "on any street or highway or in any public place" to apply only to the antecedent "or who is drunk or under the influence of alcoholic liquor, malt beverages or a controlled substance."

[¶11]    Further, we note that from 1953 to 1979, a comma did indeed precede the prepositional phrase at issue. By removal of the comma in 1979, the legislature intended to clarify that the prepositional phrase applied only to the antecedent immediately preceding. Wetering v. Eisele, 682 P.2d 1055, 1061 (Wyo. 1984) (we assume legislature does not intend futile acts and that its amendment of a statute indicates some change in existing law was intended); see Op. Wyo. Att'y Gen. No. 91-003 (June 27, 1991) (analyzing the interplay between the grammatical structure and legislative history of the statute).

[¶12]    The third basis for our conclusion is that the legislature enunciated specific exemptions to the misdemeanor of possession in subsections (i) through (v). These five exemptions are the only qualifiers for possession of alcoholic or malt beverages by a person under the age of twenty-one. If the legislature had intended possession on private property to be exempted, it would have so stated.

### CONCLUSION

[¶13]    We answer the certified question in the negative; possession of alcoholic or malt beverages by any person under the age of twenty-one is antithetical to W.S. 12-6-101(b), regardless of location. Accordingly, "on any street or highway or in any public place" is not an element of the misdemeanor offense of possession.

# EXHIBIT B

1995    TAKING TEXT AND STRUCTURE REALLY SERIOUSLY    11

been denounced as the Constitution's stupidest provision by such eminent theorists as Randall Kennedy[44] and Robert Post.[45]

Nevertheless, this inequitable, albeit conventional, interpretation of the constitutional text is wholly inconsistent with the text and grammar of Article II. After all, the phrase "at the time of the Adoption of this Constitution" is separated by an all-important comma from the phrase that precedes it, thus suggesting, indeed requiring, that it modifies both "natural *245 born Citizen" and "a Citizen of the United States."[46] A rigorous textual interpretation of the clause thus avoids

---

[44] Randall Kennedy, A Natural Aristocracy?, 12 CONST. COMMENTARY 175 (1995).

[45] Robert Post, What Is the Constitution's Worst Provision?, 12 CONST. COMMENTARY 191 (1995).

[46] The issue raised by the comma's placement is described by experts as "the problem of ambiguous modification." See Terri LeClercq, Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers, 2 LEGAL WRITING: J. LEGAL WRITING INST. (forthcoming 1995). David Mellinkoff has traced such problems back to the 16th century, which suggests that the problem was well known to the Framers. DAVID MELLINKOFF, THE LANGUAGE OF THE LAW 164-65 (1963). Regarding this and other interpretive quandaries, Jabez Sutherland's 1891 treatise on statutory construction presumably summarized the best conventional understanding of legal usage; at the very least, anyone who disagrees with Sutherland bears a very high burden of proof. According to Sutherland,

Referential and qualifying phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence. This proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.

Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.

Id. (quoting JABEZ SUTHERLAND, SUTHERLAND ON STATUTORY CONSTRUCTION ' 267 (1891) (emphasis added)).

One might argue that the Constitution's use of commas often strikes a modern reader as especially promiscuous. See, e.g., U.S. Const. art. II, ' 1, cl. 4 ("The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States."); id. cl. 7 ("The President shall, at stated Times, receive for his Services, a Compensation, which shall neither be encreased nor diminished during

12      TAKING TEXT AND STRUCTURE REALLY SERIOUSLY        1995

the vicious discrimination against non-natural-born citizens usually ascribed to it by routine interpretation. When the text is given its plain meaning, it suggests instead a far more profound discrimination against those who were not sufficiently part of the national community at the nation's birth.

Indeed, it seems clear enough that our reading of the text is absolutely required under a plain-meaning approach that pays due attention to the Constitution's words and its punctuation.[47] To be sure, this interpretation requires some elaboration, but this is not fatal to plain-meaning arguments. After all, as Justice Scalia, the doyen of textualists, has pointed out, a patch of text may be "susceptible of only one meaning, although ... that meaning is not immediately accessible" until one engages in a complex process of analysis.[48]

**\*246** Some benighted souls may dare to label our reading as "frivolous" because it seems to result in what they regard as a monumentally stupid—and therefore unacceptable—outcome. One might begin by noting that it is not at all clear that stupid outcomes are necessarily precluded by the standard norms of constitutional interpretation.[49] It was, after all, James Madison himself who told his colleagues in the very first session of the House of Representatives that "[h]ad the power of making treaties ... been omitted, however necessary it might have been, the defect could only have been lamented, or supplied by an amendment of

---

the Period for which he shall have been elected ... ."). But surely not all commas can be overlooked, and one must presumably have a theory that allows one to differentiate between meaningful and superfluous commas. It seems most charitable to begin with the presumption that commas were intended to be meaningful, so that the burden of proof should be on the person who wishes to ignore certain commas as superfluous. And, needless to say, a preference for one or another political result cannot, for dedicated constitutionalists, count as a sufficient reason for respecting or ignoring the controversial comma.

[47] Devotion to craft requires "a commitment of the legal community to conduct our government in accord with the best interpretation of ... text and structure." Tribe, supra note 5, at 1279 (emphasis in original). Such a commitment surely involves observing "absolutely unambiguous commands of the Constitution." Id.

[48] Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 707 (1991) (Scalia, J., dissenting). We owe this reference to George H. Taylor, Structural Textualism, 75 B.U. L. REV. 321, 342 (1995). Professor Taylor describes Scalia as "arguing that even though the inquiry was taxing, because the statute [under consideration in Pauley] was in the end definitive, the agency interpretation was not entitled to deference." Id. at 342 n.91.

[49] See generally Symposium, Constitutional Stupidities, 12 CONST. COMMENTARY 139 (1995).

# EXHIBIT C

MASSACHUSETTS BOARD OF REGISTRATION OF REAL ESTATE BROKERS AND SALESPERSONS
# MANDATORY AGENCY DISCLOSURE – AGENCY RELATIONSHIP

The purpose of this disclosure is to enable you to make informed choices before working with a real estate licensee. It must be provided at the first personal meeting that you have with an agent to discuss a specific property. THIS IS NOT A CONTRACT. It is a disclosure notice for your information and protection. BE SURE TO READ THE DESCRIPTIONS OF THE DIFFERENT TYPES OF AGENCY REPRESENTATION IN THIS DISCLOSURE.

## CONSUMER INFORMATION

1. Whether you are the buyer or the seller, you can choose to have the advice, assistance and representation of your own agent. Do not assume that a broker is acting on your behalf unless you have contracted with that broker to represent you.
2. All real estate licensees must, by law, present properties honestly and accurately.
3. If you are a seller you may authorize your listing agent to cooperate with agents from other firms to help sell your property. These cooperating agents may be subagents who work for the seller or buyer's agents.
4. If you are the buyer you have the option of working with sellers' or buyers' agents. This decision will depend on the types of services you want from a real estate agent. A buyer should tell sellers' agents, including subagents, only what he/she would tell the seller directly.

## CONSUMER RESPONSIBILITY

The duties of a real estate licensee do not relieve the consumer of the responsibility to protect his/her own interest. If you need advice for legal, tax, insurance or other matters it is your responsibility to consult a professional in those areas.

## ACKNOWLEDGEMENT

I have provided this disclosure form to __X Maarten N. Pellegrini, NICOLA M PELLEGRINI__

I have informed the above named consumer that I am a: (check one)    ☐ Seller's Agent    ☒ Buyer's Agent.

__Dick Shantorl__                __9056/08__                _____
(Signature of Real Estate Agent)    (License Number)              (Date)

I have read this agency disclosure form IN ITS ENTIRETY, INCLUDING THE INFORMATION regarding BUYER'S AGENT, SELLER'S AGENT and DISCLOSED DUAL AGENT. I understand that this form is for agency disclosure and NOT A CONTRACT. It was provided to me by the agent named above.

__Maarta N. Pelleg_____    __12-4-03__    Check Here: ☒ Buyer
(Signature of Consumer/s)              (Date)                      ☐ Seller

☐ As a Consumer, I recognize that I need not select any agency representations at this time. Therefore, I decline to sign this disclosure. Any additional reason for declining to sign:

_____
(Please print name of consumer and reason, if any.)

 **MULTIPLE LISTING SERVICE OF BERKSHIRE COUNTY BOARD OF REALTORS® INC – Pg 1 of 2** 

# TYPES OF AGENCY REPRESENTATION IN MASSACHUSETTS

### SELLER'S AGENT

When a seller engages in the services of a listing broker, that seller becomes the broker's client. This means the broker, and his/her subagents represent the seller. They owe the seller undivided loyalty, utmost care, disclosure, obedience to lawful instruction, confidentiality and accountability. They must put the seller's interest first and negotiate for the best price and terms for their client, the seller. (the seller may also authorize subagents to represent him/her in marketing the property to buyers).

### BUYER'S AGENT

When a buyer engages in the services of a broker then that broker becomes the broker's client. The broker owes the buyer undivided loyalty, utmost care, disclosure, obedience to lawful instruction, confidentiality and accountability. They must put the buyer's interest first and negotiate for the best price and terms for their client, the buyer. (The buyer may also authorize subagents to represent him/her in locating property).

### DISCLOSED DUAL AGENT

A broker can work for both the buyer and the seller on the same property provided the broker obtains the informed consent of both parties. The broker is then considered a disclosed dual agent. This broker owes the seller and the buyer a duty to deal with them fairly and honestly. In this type of agency relationship the broker does not represent either the seller or buyer exclusively and they cannot expect the broker's undivided loyalty. Also, undisclosed dual agency is illegal.

