UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05 - 30077 - MAP

| | |
|---|---|
| MAARTEN N. PELLEGRINI and<br>NICOLA M. PELLEGRINI,<br>    *Plaintiffs*<br><br>v.<br><br>CENTURY 21, HAROLD DUPEE<br>REALTORS,<br>    *Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## JOINT PRE-TRIAL MEMORANDUM

### 1. *Concise Statement of Evidence*

**Plaintiff's Statement:**

On January 23, 2004, the plaintiff, Maarten Pellegrini (hereinafter "plaintiff"), and his brother, Nicola Pellegrini, took title to property located at 56 Liberty Street in North Adams, Massachusetts (hereinafter "subject property"). The subject property, which was built in or about 1875, was purchased from the Estate of Walter M. Bronson.

Mr. Richard Shoestock represented himself as the buyer's agent for Maarten and Nicola Pellegrini. This representation was made with full knowledge of Century 21 Harold Dupee Realtors (hereinafter "Defendant"). Ms. Frances Buckley of the Defendant was the seller's agent representing the seller, James Horrigan, executor of the Estate of Walter M. Bronson.

On two separate occasions Mr. Shoestock faxed to Maarten Pellegrini a Standard Berkshire County MLS Purchase and Sale Agreement ("P&S Agreement") which had attached only a single page (Property Transfer Notification Certification ("Certification")) of the standard Property Transfer Lead Paint Notification ("PTLPN") which should be an 11 page document. The language of the P&S Agreement indicates that the PTLPN is attached to the P&S Agreement which represented to the Plaintiff that only the single page Certification was the standard PTLPN. By the clear language of the P&S Agreement, Plaintiff, as could any reasonable and prudent person, signed the Certification believing it to be the standard PTLPN and his signature did not attest to any fact that he received the entire standard PTLPN. The attachments made in the P&S Agreement were made knowingly, or through culpable negligence, by Defendant and Mr. Shoestock. Further to this, Defendant intended and expected that Mr. Shoestock make the attachments to the P&S Agreement.

Pursuant to 42 U.S.C.A. §4852d, it was mandated that the Secretary and the Administrator of the Environmental Protection Agency promulgate regulations for the disclosure of lead-based paint hazards in, among other things, target housing offered for sale. In addition, the statute and regulations allow states to develop their own lead hazard information pamphlets and "to use [them] in lieu of the Federal Pamphlets" as is the case here in Massachusetts.

Plaintiff has never received the PTLPN prior to entering into the P&S Agreement, and was lead by misrepresentations to believe the PTLPN **was** the Certification and Plaintiff's signature of the Certification only attests to receiving that single page Certification.

**Defendant's Statement:**

On January 23, 2004, the plaintiff, Maarten Pellegrini (hereinafter "plaintiff"), and his brother, Nicola Pellegrini, took title to property located at 56 Liberty Street in North Adams, Massachusetts (hereinafter "subject property"). The subject property, which was built in or about 1875, was purchased from the Estate of Walter M. Bronson.

Mr. Pellegrini was represented by Richard Shoestock (hereinafter "Mr. Shoestock"), a real estate sales person licensed by the Commonwealth of Massachusetts. The seller, James Horrigan, executor of the Estate of Walter M. Bronson, was represented by Frances Buckley, a real estate broker licensed by the Commonwealth of Massachusetts. Harold Dupee, Inc., which, at the time of the subject incident, was doing business as Century 21 Harold Dupee Realtors (hereinafter "defendant"), was the listing broker for the subject property.

In purchasing the subject property, the plaintiff, on December 1, 2003, signed a Property Transfer Notification Certification ("Certification"), attesting to the fact that he received the Property Transfer Lead Paint Notification ("Notification"), and, at two separate times on December 4, 2003, he signed a Standard Berkshire County MLS Purchase and Sale Agreement ("P&S Agreement"), attesting to the fact that he received the Notification.

However, the plaintiff now brings a claim under the auspices of 42 U.S.C.A. §4852d ("§4852d"), asserting that the defendant knowingly violated requirements set forth therein, specifically §4852d(a)(1)(A), by failing to provide him with either a Federal-developed or an EPA approved State-developed Notification.

Pursuant to 42 U.S.C.A. §4852d, it was mandated that the Secretary and the Administrator of the Environmental Protection Agency promulgate regulations for the disclosure of lead-based paint hazards in, among other things, target housing offered for sale. It was further required that these regulations require that, before a purchaser is obligated under any contract to purchase target housing, the seller shall: (A) provide the buyer with a lead hazard information pamphlet; (B) disclose to the purchaser the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing; and (C) permit the purchaser a 10-day period to conduct a risk assessment or inspection for the presence of lead-paint hazards. (*42 U.S.C.A. §4852d(a)(1)*) In addition, it was required that any regulations promulgated under this section shall provide that every contract for the purchase and sale of target housing shall contain a Lead Warning Statement; and a statement signed by the purchaser that they have: (A) read the lead warning statement and understand its contents; (B) received a hazard information pamphlet; and

372558v1

(C) had a 10-day opportunity to conduct a risk assessment or inspection. (*42 U.S.C.A. §4852d(a)(2)*)

As to the Certification, signed by the plaintiff on December 1, 2003, he now contends that he signed it under the assumption that it was the Notification, and, as the two P&S Agreements, which were both signed on December 4, 2003, he contends that "[he] did not understand paragraph [19]", which is titled 'Lead Paint Law', and "assumed he had all of the required standard disclosures."

Contrary to plaintiff's allegations, the defendant contends that, not only did Mr. Pellegrini attest to receiving the Notification, the Notification was actually provided prior to his signing the P&S Agreement. Specifically, the defendant asserts that the Notification was delivered, in its entirety, in late November, 2003, following the initial viewing of the subject property.

## 2. *Established Facts*

1. The plaintiff, Maarten N. Pellegrini, brings this cause of action under the auspices of 42 U.S.C.A. §4852d.

2. This cause of action arises from the purchase of property at 56 Liberty Street in North Adams, Massachusetts ("subject property").

3. Maarten and Nicola Pellegrini purchased the subject property from the Estate of Walter M. Bronson.

4. The executor of the Estate of Walter M. Bronson was James Horrigan.

5. The listing broker for the subject property was Century 21 Harold Dupee Realtors.

6. At the time of the sale, Harold Dupee Inc., doing business as Century 21 Harold Dupee Realtors, was a licensed real estate corporation.

7. Frances Buckley was the listing agent for the subject property.

8. At the time of the sale, Frances Buckley was a real estate broker as licensed by the Commonwealth of Massachusetts.

9. Frances Buckley acted as the seller's agent in this transaction.

10. The buyer's agent was Richard Shoestock.

11. At the time of the sale of the subject property, Mr. Shoestock was an independent contractor.

12. In late November 2003, Maarten and Nicola Pellegrini requested a showing of the subject property.

13. Maarten and Nicola Pellegrini were shown the subject property by Richard Shoestock.

14. Gerald Pellegrini, Maarten and Nicola Pellegrini's father was present at the showing.

15. Mary Jane Dalmaso, the Director and President of Harold Dupee Inc., was present for some of the showing.

16. Following the showing, Maarten Pellegrini, Nicola Pellegrini and their father spent time at the offices of Century 21 Harold Dupee Realtors with Ms. Shoestock.

17. The plaintiff, Maarten Pellegrini, was not present during the entire time that Nicola Pellegrini and their father were at the offices of Century 21 Harold Dupee Realtors, but instead was at an appointment at Massachusetts College of Liberal Arts.

18. On November 29, 2003, Maarten Pellegrini was faxed a written correspondence from Richard Shoestock.

19. On December 1, 2003, Maarten Pellegrini signed the "Property Transfer Notification Certification" endorsed by James Horrigan on December 2, 2002.

20. On or about December 1, 2003, Maarten and Nicola Pellegrini offered to purchase the subject property for $65,000.00.

21. On December 1, 2003, Maarten Pellegrini was faxed a written correspondence from Richard Shoestock.

22. Maarten and Nicola Pellegrini's initial offer of $65,000.00 was rejected.

23. On December 4, 2003, Nicola Pellegrini signed the "Property Transfer Notification Certification" endorsed by James Horrigan on December 2, 2002.

24. On or about December 4, 2003, Maarten and Nicola Pellegrini made a second offer, this time in the amount of $75,000.00.

    With respect to the second offer, Maarten and Nicola Pellegrini, on December 4, 2004, initialled and endorsed a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement" with an offered purchase price of $75,000.00

26. Maarten and Nicola Pellegrini's second offer of $75,000 was rejected.

27. On or about December 4, 2003, Maarten and Nicola Pellegrini made a third offer, this time in the amount of $77,000.00.

28. With respect to the third offer, Maarten and Nicola Pellegrini, on December 4, 2004, initialled and endorsed a second "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement" with the offered purchase price of $77,000.00

29. Maarten and Nicola Pellegrini's third offer was accepted by the seller.

30. Pursuant to the terms of the agreement the deed was to be delivered and the purchase price paid on or before February 10, 2004.

372558v1

31. The subject property was purchased by Maarten and Nicola Pellegrini on or about January 23, 2004.

32. The subject property was built in or about 1875.

33. During the showing, Ms. Dalmaso indicated to Maarten and Nicola Pellegrini that lead paint was probably present in the home.

34. Maarten and Nicola Pellegrini were told by Dick Shoestock that there was a good chance that lead paint was present in the home.

35. In the residential listing it was indicated that it was unknown if lead paint was present in the home.

36. In the "Massachusetts Association of Realtors Seller's Description of Property Form," the seller indicated that he did not know if lead paint was present in the home.

37. On December 15, 2003 Maarten and Nicola Pellegrini had a home inspection completed by Neil Segala, a home inspector licensed by the Commonwealth of Massachusetts.

38. Maarten and Nicola Pellegrini filed their Complaint on May 26, 2005 in the United States District Court District of Massachusetts.

39. In the initial Complaint it is alleged that the defendant violated Federal Law 42 U.S.C. §4852. The Complaint was later amended to assert a claim under the proper section, 42 U.S.C. §4852d.

40. On August 10, 2005, Nicola Pellegrini transferred his interest in the property to Maarten Pellegrini.

41. On January 10, 2006, Nicola Pellegrini withdrew as the plaintiff in this matter

42. On June 7, 2006, Maarten Pellegrini had a venous lead test done at North Adams Regional Hospital. The test results showed that the plaintiff's blood lead level was three (3) micrograms per deciliter.

43. On December 1, 2004, Maarten Pellegrini participated in a family counseling session with both his mother and his brother.

44. Barbara Holian, a Licensed Mental Health Counselor, provided family counseling services during this session.

45. On December 1, 2004, Ms. Holian's client was Isabel Pellegrini, Maarten Pellegrini's mother.

46. Century 21, Harold Dupee Realtors knew that the Massachusetts Property Transfer Lead Paint Notification ("PTLPN") was an eleven page document.

47. As the buyer's agent, Richard Shoestock was, at all times, acting as an agent of Maarten and Nicola Pellegrini.

Furthermore, Defendant may stipulate to the following facts:

1. As of the purchase date of the subject property, Maarten Pellegrini had not been diagnosed, by a medical professional, with any physical injuries, ailments or illness that can be attributable to the exposure to lead paint.

2. As of the purchase date of the subject property, Maarten Pellegrini had not been diagnosed, by a psychiatrist, psychologist, psychotherapist, neuropsychologist or other mental health professional, with any injuries, ailments, mental diseases or mental defects that can be attributable to the exposure to lead paint

3. Century 21, Harold Dupee Realtors knew, or should have known, that Mr. Shoestock directly represented that he was exclusively the buyer's agent.

4. A lead abatement estimate was conducted, on behalf of Maarten and Nicola Pellegrini, by Mr. Michael Nuvallie.

Furthermore, Plaintiff may stipulate to the following facts:

1. Mr. Shoestock, at the time of the sale, was a real estate sales person licensed by the Commonwealth of Massachusetts.

2. Maarten Pellegrini's blood lead level was below twenty-five micrograms per deciliter (25 ug/dL), the level of concern for adults (aged ≥ 16 years), as set by the Center for Disease Control.

3. The "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement" was created for the use of Berkshire County Realtors by the Multiple Listing Service ("MLS") of the Berkshire County Board of Realtors.

### 3. Contested Facts

**Plaintiff:**

1. Plaintiff contests any allegation that the defendant provided the Property Transfer Lead Paint Notification ("PTLPN"), or some other equivalent lead information pamphlet.

2. Plaintiff contests any allegation by the defendant that, at the office, following the initial showing, Richard Shoestock, Nicola Pellegrini and/or Gerald Pellegrini discussed, among other things, the subject property.

3. Plaintiff contests any allegation by the defendant that, in an affidavit dated February 10, 2007, Gerald Pellegrini indicated that he could not recall Mr. Shoestock giving him or Nicola any documentation related to lead paint at that time.

372558v1

4. Plaintiff contests any allegation by the defendant that, in an affidavit dated February 11, 2007, Nicola Pellegrini indicated that he could not remember Mr. Shoestock giving him the property transfer lead paint notification at that time.

5. Plaintiff contests any allegation by the defendant that, Maarten Pellegrini sought no further counseling with Ms. Holian.

6. Plaintiff contests any allegation by the defendant that the correspondence, sent by Mr. Shoestock on November 29, 2003, contained three (3) separate documents: (1) a blank copy of a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement"; (2) a "Property Transfer Notification Certification," as endorsed by James Horrigan on December 2, 2002; and, (3) a "Massachusetts Association of Realtors Seller's Description of Property Form," as endorsed by James Horrigan on November 24, 2002.

7. Plaintiff contests any allegation by the defendant that the correspondence, sent by Mr. Shoestock on December 1, 2003, contained three (3) separate documents: (1) a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement" with the offered purchase price of $65,000.00; (2) a "Property Transfer Notification Certification" as endorsed by James Horrigan on December 2, 2002; and, (3) a blank "Mandatory Agency Disclosure – Agency Relationship" form.

8. Plaintiff contests any allegation by the defendant that Mr. Nuvallie is not licensed by the Commonwealth of Massachusetts to do lead abatement work.

9. Plaintiff contests any allegation by the defendant that, as of the purchase date of the subject property, Maarten Pellegrini has not been diagnosed, by a medical professional, with any physical injuries, ailments or illness that can be attributable to the exposure to lead paint.

10. Plaintiff contests any allegation by the defendant that, as of the purchase date of the subject property, Maarten Pellegrini has not been diagnosed, by a psychiatrist, psychologist, psychotherapist, neuropsychologist or other mental health professional, with any injuries, ailments, mental diseases or mental defects that can be attributable to the exposure to lead paint.

11. Plaintiff contests any allegation by the defendant that the language of the purchase and sale contract represented that the attachment to the purchase and sale contract was only the "Property Transfer Notification Certification".

12. If Mr. Shoestock entered into a contract with the seller, the Plaintiff contests any allegation by the defendant that: it did not know of the contract; it informed Plaintiff of the contract; it did not have information of the contract reasonably available to it; or, that it was not silent as to the contract.

13. Plaintiff contests any allegation by the defendant that it was not knowledgeable, either directly or through reasonably available information, of Mr. Shoestock's activities with respect to the sale of the subject property.

372558v1

14. Plaintiff contests any allegation by the defendant that it would not be reasonably or prudently anticipated that he would believe and act upon Mr. Shoestock's representation that he was the buyer's agent.

15. Plaintiff contests any allegation by the defendant that it did not inform Mr. Shoestock that only the Property Transfer Notification Certification needed to be attached to a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement."

16. Plaintiff contests any allegation by the defendant that it informed Mr. Shoestock that the Property Transfer Notification Certification and the Property Transfer Lead Paint Notification ("PTLPN") need to be attached to a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement."

17. Plaintiff contests any allegation by the defendant that it would not be reasonably or prudently anticipated that he would believe and act upon the representation that the Property Transfer Notification Certification was the complete Property Transfer Lead Paint Notification ("PTLPN").

18. Plaintiff contests any allegation by the defendant that it was not silent as to the full content of the Property Transfer Lead Paint Notification ("PTLPN") after December 1, 2003 and before Plaintiff entered into the purchase and sale contract..

19. Plaintiff contests any allegation by the defendant that Francis Buckley disclosed the PTLPN to the Plaintiff before entering into the purchase and sale contract.

20. Plaintiff contests any allegation by the defendant that it was not silent as to the full content of the PTLPN before Plaintiff entered into the purchase and sale contract.

21. Plaintiff contests any allegation by the defendant that Plaintiff has not suffered losses valued at the estimated costs of work to remove lead hazards present on the property.

22. Plaintiff contests any allegation by the defendant that Plaintiff has not suffered losses due to entering into a purchase agreement price at a substantially higher amount than Plaintiff would have been willing to pay for the property if the hazards of lead paint were known.

23. Plaintiff contests any allegation by the defendant that Plaintiff has not suffered losses valued at the estimated cost to remove himself and his mother Isabel (also a resident of the property), and all of their belonging from the property as well as the costs to house Plaintiff and Isabel and their belonging until the lead removal work on the property is complete as well as the costs to relocate Plaintiff, Isabel and their belongings back to the property.

24. Plaintiff contests any allegation by the defendant that Plaintiff has not suffered losses valued at the opportunity costs lost by Plaintiff's purchase of the property.

25. Plaintiff contests any allegation by the defendant that Plaintiff has not suffered losses due to the inability to rent out the property due to the inability to renovate the property.

26. Plaintiff contests any allegation by the defendant that Plaintiff has not suffered losses due to Physical and/or emotional distress caused or aggravated by any combination of the following: the hazards associated with lead paint present in the property, the 25 year financial burden of a mortgage on the hazardous property.

27. Plaintiff contests any allegation by the defendant that Plaintiff has not suffered losses due to lost equity valued at the difference in the value of the property as it is now compared to the value of the property were it renovated.

**<u>Defendant:</u>**

1. Defendant contests any allegation that the plaintiff was not provided with the Property Transfer Lead Paint Notification ("PTLPN"), or some other equivalent lead information pamphlet.

2. Defendant contests any allegation by the plaintiff that, as the buyer's agent, Richard Shoestock was acting as an agent of Maarten and Nicola Pellegrini only during the time from the signing of the agency disclosure to the time of the sale of the subject property.

3. Defendant contests any allegation by the plaintiff that the correspondence, sent by Mr. Shoestock on November 29, 2003, contained two (2) separate documents: (1) a blank copy of a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement", with a "Property Transfer Notification Certification," as endorsed by James Horrigan on December 2, 2002; and, (2) a "Massachusetts Association of Realtors Seller's Description of Property Form," as endorsed by James Horrigan on November 24, 2002.

4. Defendant contests any allegation by the plaintiff that the correspondence, sent by Mr. Shoestock on December 1, 2003, contained two (2) separate documents: (1) a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement" with the offered purchase price of $65,000.00, with a "Property Transfer Notification Certification" as endorsed by James Horrigan on December 2, 2002; and, (2) a blank "Mandatory Agency Disclosure – Agency Relationship" form.

5. Defendant contests any allegation by the plaintiff that Mr. Nuvallie is a public official in the Commonwealth of Massachusetts [sic] to do lead abatement cost estimates.

6. Defendant contests any allegation by the plaintiff that Century 22, Harold Dupee Realtors trained Mr. Shoestock as a real estate agent.

7. Defendant contests any allegation by the plaintiff that Francis Buckley did not disclose the Property Transfer Lead Paint Notification ("PTLPN") to the buyer's of the subject property.

8. Defendant contests any allegation by the plaintiff that the language of the purchase and sale contract represented that the attachment to the purchase and sale contract was the Property Transfer Lead Paint Notification ("PTLPN").

372558v1

9. Defendant contests any allegation by the plaintiff that Mr. Shoestock entered into a contract with the seller or otherwise acted inappropriately as a buyer's agent.

10. Defendant contests any allegation by the plaintiff that the defendant represented to him that the Property Transfer Notification Certification was the Property Transfer Lead Paint Notification ("PTLPN").

11. Defendant contests any allegation by the plaintiff that the defendant, at any point in time, was silent as to the Property Transfer Lead Paint Notification ("PTLPN") before the plaintiff entered into the purchase and sale contract.

12. Defendant contests any allegation by the plaintiff that he entered into a purchase and sale contract in reliance on the representation that the Property Transfer Notification Certification was the Property Transfer Lead Paint Notification ("PTLPN").

13. Defendant contests any allegation by the plaintiff that the Property Transfer Lead Paint Notification ("PTLPN") needs to be attached to a "Standard Berkshire County Multiple Listing Service Purchase and Sale Agreement."

14. Defendant contests any allegation by the plaintiff that his action of entering into a purchase and sale contract caused him to suffer a loss.

15. Defendant contests any allegation by the plaintiff that it was represented that the Property Transfer Notification Certification was the complete Property Transfer Lead Paint Notification ("PTLPN").

16. Defendant contests any allegation that the plaintiff has suffered losses valued at the estimated costs of work to remove lead hazards present on the property.

17. Defendant contests any allegation that the plaintiff has suffered losses due to entering into a purchase agreement at the price he did.

18. Defendant contests any allegation that the plaintiff suffered losses valued at the estimated cost to remove himself and his mother Isabel (also a resident of the property), and all of their belonging from the property as well as the costs to house Plaintiff and Isabel and their belonging until the lead removal work on the property is complete as well as the costs to relocate Plaintiff, Isabel and their belongings back to the property.

19. Defendant contests any allegation that the plaintiff has suffered losses valued at the opportunity costs lost by Plaintiff's purchase of the property.

20. Defendant contests any allegation that the plaintiff has suffered losses due to the inability to rent out the property due to the inability to renovate the property.

21. Defendant contests any allegation that the plaintiff has suffered losses due to Physical and/or emotional distress.

372558v1

22.  Defendant contests any allegation that the plaintiff has suffered losses due to lost equity valued at the difference in the value of the property as it is now compared to the value of the property were it renovated.

### 4. Jurisdictional Questions

None.

### 5. Pending Motions

**Plaintiff**:

None.

**Defendant**:

The defendant has identified exhibits that have not been produced throughout the course of discovery or in supplementation to his initial disclosure. Should these documents not be forthcoming seasonably in advance of trial, the defendant will bring a motion at the time of trial to preclude the plaintiff from presenting evidence therein or from presenting the exhibits.

At this time, the defendant intends to file motions in limine addressing, but not limited to, the following issues: testimony by plaintiff's expert witnesses; Pro-Se plaintiff's assistance by counsel during the trial; what damages are recoverable under 42 U.S.C.A. §4852d; the introduction of certain documents that do not properly represent the facts presented; whether plaintiff is entitled, as pro-se litigant, to collect attorney fees; and the requirements of 42 U.S.C.A. §4852d.

### 6. Law Issues

**Plaintiff**:

Standard of "knowingly" requirement of 42 U.S.C.A. §4852d(a) is discussed in *Smith v. Coldwell Banker Real Estate Services, Inc.*, 122 F.Supp.2d 267. Intent or knowledge of non-compliance is **not required** for liability. The commonly understood meaning of "knowingly" is the standard for the statute. The Defendant's knowledge of the acts is sufficient in that he "was aware of his or her conduct and that [he] did not perform it merely through ignorance, mistake or accident." *Id* at 273.

Language of P&S Agreement by the rules of grammar and punctuation and the long understood rule of last antecedent represents that the standard notification (PTLPN) is attached to the agreement. See Plaintiff's Reply To Defendant's Opposition To Plaintiff's Statement Of Material Facts, Concise Statement, And Argument (docket #39) page 4 (regarding the doctrine of last antecedent).

Plaintiff contends that he may have the benefit of assistance from a non-attorney so long as that assistance is in a non-representative capacity before the Court. See *Thomas v. Collins*, 323 U.S. 516, 544 (1944), *United Transportation Union v. Michigan Bar*, 401 U.S. 576, 585

372558v1

(1971). Defendant has provided no legal support for their position that Plaintiff should be barred from such non-representative assistance. Plaintiff has also found no support for the barring of such assistance.

Plaintiff contends that Century 21 should be barred from alleging that Plaintiff received the federal pamphlet for disclosure of lead paint information since the EPA regulations allow states to develop their own lead hazard information pamphlets and "to use [them] in lieu of the Federal Pamphlets" (See Federal Register / Vol. 61 No. 45 / Rules & Regulations, Page 9071 D.2.a. second paragraph) provide for states to require their own disclosure form in lieu of the federal pamphlet in order to comply with 42 U.S.C.A. §4852d, which is the case here in Massachusetts, and also since the federal pamphlet requires its own certification form which Century 21 does not claim the Plaintiff signed.

**Defendant**:

With respect to violations of 42 U.S.C.A. §4852d(a), 'Lead disclosure in purchase and sale or lease of target housing,' any person found to have "knowingly" violated the provisions of the section shall be liable to the purchaser in an amount equal to three (3) time the amount of damages incurred by such individual. *42 U.S.C.A. §4852d(b)(3)* In addition, the Court may award court costs, reasonable attorney fees and expert witness fees. *42 U.S.C.A. §4852d(b)(3)*. However, as to a "knowing" violation, civil liability may not be imposed against a defendant absent evidence of their intent or knowledge of noncompliance. Civil liability cannot be imposed for inadvertence or inattentiveness. Smith v. Coldwell Banker Real Estate Services, Inc., 122 F.Supp.2d 267, 273 (2000).

### 7. *Amendment to Pleadings*

None.

### 8. *Additional Matters*

None.

### 9. *Trial Length*

**Plaintiff**:

Unsure

**Defendant**:

3-4 days

### 10. *Witnesses*

**Plaintiff's Witnesses:**

1.   Maarten Pellegrini, plaintiff, testify to facts of case.

372558v1

2. Gerald Pellegrini, testify to alleged disclosure facts.
   37 Granby Rd.
   Worcester MA 01604

3. Nicola Pellegrini, testify to alleged disclosure facts.
   PO Box 60273
   Staten Island, NY, 10306

4. Barabara Holian (Expert)– Licensed Mental Health Clinician For Breen Center Pittsfield, MA, to testify regarding Plaintiff's sessions with her and emotional distress.
   333 East St,
   Pittsfield, MA

5. Michael Nuvalie (Expert) – Lead Abatement Estimator For The City Of North Adams, to testify with matters related to estimated costs to remove lead paint from the subject property.
   10 Main Street
   North Adams, MA 01247

6. Mary-Jane Dalmaso, Harold Dupee, Inc. to possibly testify regarding material facts.

7. Richard Shoestock, to possibly testify regarding material facts.

8. The plaintiff reserves the right to identify additional witnesses upon reasonable notice to the Court and the defendant.

9. The plaintiff reserves the right to call any necessary rebuttal or impeachment witnesses.

**Defendant's Witnesses:**

1. Maarten Pellegrini, plaintiff

2. Gerald Pellegrini, fact-witness

3. Nicola Pellegrini, fact-witness

4. Mary-Jane Dalmaso, Harold Dupee, Inc., representative of defendant

5. Richard Shoestock, real estate sales person

6. The defendant incorporates herein the witness list of the Plaintiff.

7. The defendant reserves the right to call as witnesses individuals identified in the medical records of Mr. Pellegrini.

8. The defendant reserves the right to identify additional witnesses upon reasonable notice to the Court and the plaintiff.

9. The defendant reserves the right to call any necessary rebuttal or impeachment witnesses.

### 11. *Exhibits*

**Plaintiff's Proposed Exhibits:**

1. Agency Disclosure Forms

2. Affidavit of Nicola Pellegrini

3. Affidavit of Gerald Pellegrini

4. Affidavit of Maarten Pellegrini

5. Lead Inspection Report

6. Lead Hazard Abatement Estimates

7. Medical Records For Maarten Pellegrini

8. Signed Agency Disclosures

9. Faxes of Nov. 29, 2003, and Dec. 1, 2003

10. PTLPN

The plaintiff further reserves the right to offer: (i) records inconsistent with the defendant's trial testimony, and (ii) other records seasonably disclosed to the defendant in advance of trial.

**Plaintiff's Proposed Exhibits (Objected to by Defendant):**

11. 30(b)(6) Deposition of Century 21

12. Deposition of Richard Shoestock

13. Century 21 Admissions and Interrogatories

14. Median Rental Prices for 2 and 3 bedroom units in North Adams

15. Median Attorneys' Fees as matter of public record

**Defendant's Proposed Exhibits:**

1. MLS Listing for 56 Liberty Street

372558v1

2. Massachusetts Association of Realtors Seller's Description of Property (dated: 11/24/02)

3. CLPPP Property Transfer Lead Paint Notification

4. Correspondence from Richard Shoestock to Maarten Pellegrini (dated: 12/1/03)

5. Endorsed Property Transfer Notification Certification

6. Endorsed Standard Berkshire County MLS Purchase and Sale Agreement (dated: 12/4/03, $76,000.00)

7. Endorsed Standard Berkshire County MLS Purchase and Sale Agreement (dated: 12/4/03, $77,000.00)

8. Mandatory Agency Disclosure Form (dated: 12/4/03)

The defendant further reserves the right to offer: (i) records inconsistent with the plaintiff's trial testimony, and (ii) other records seasonably disclosed to the plaintiff in advance of trial.

**Defendant's Proposed Exhibits (Objected to by Plaintiff):**

9. Home Inspection Report, as completed by Neil Segala (12/15/03)

10. Document titled: 56 Liberty St. Home Inspection Issues (dated: 12/17/03)

| | |
|---|---|
| The Plaintiff,<br>**MAARTEN N. PELLEGRINI,** *Pro Se* | The Defendant,<br>**CENTURY 21, HAROLD DUPEE REALTORS**<br><br>By Its Attorneys,<br>**Morrison Mahoney LLP** |
|   /S/  Maarten N. Pellegrini<br>Maarten N. Pellegrini<br>56 Liberty Street<br>North Adams, Massachusetts  01247<br>(774) 364-0081 |   /S/  John G. Bagley<br>John G. Bagley, Esquire, BBO# 026050<br>Andrew P. Lawendowski, BBO# 656833<br>1500 Main Street, Suite 2400<br>P.O. Box 15387<br>Springfield, MA  01115-5387<br>(413) 737-4373<br>(413) 739-3125 (Fax) |

372558v1